The record discloses that: "Upon the call of this case for trial, and after empaneling the jury and reading the pleadings, the court suggested the first question to be determined in the case was: `What was the real contract between plaintiff and defendant as to the matters in controversy in this action?' And with the consent of the attorneys, the court directed counsel upon both sides to present to the court and jury such evidence as they had of the contract, and to present all the evidence they had bearing upon the contract and the construction thereof. The court announced to counsel that upon determining what the real contract was between the parties the court would refer the question of damages, if any, to be determined by a referee.
"After the introduction of evidence, counsel announced they had no more evidence to offer upon the above question, and counsel for both *Page 663 
sides agreed that upon the evidence offered it is a question of law for the court to determine what the contract was between the parties, and whether or not, if defendant was damaged as alleged in its counterclaim, plaintiff would be liable for such damages.
"After hearing argument of counsel on both sides, the court holds that the paper-writing offered in evidence by defendant, marked `Exhibit 1,' was the contract between the parties, and that under the terms and provisions of the contract it covered damages to property by blasting, and the plaintiff would be liable to the defendant for damages, if any, caused by blasting or explosion, as well as for expenses reasonably incurred by the defendant in the settlement of such matters. To which ruling the plaintiff excepts.
"Subject to plaintiff's exceptions to the court's ruling and to the plaintiff's right to appeal, and except as stated below with reference to attorney's fees it is agreed that if the court, in making the ruling above, is correct, that under the provisions and conditions of the policy in question the plaintiff would be liable to the defendant for damages under its counterclaim, and that such damages would be as follows:" (Naming them.)
"It is agreed that the foregoing amounts were paid by the defendants on account of the valid claims for negligence of Harrison-Wright Company in the construction of sewer lines in Greenville, S.C., as alleged in the counterclaim, said claims having been made against Harrison-Wright Company on account of property damages suffered by Crisp, Talley, Burdette, Whiteside, and Goodman in connection with the blasting operations described in the pleadings, and that the amounts paid H.C. Jones, Hicks Johnston, and Tillett, Tillett Kennedy were on account of expenses incurred by the defendant in connection with the settlement of the Crisp, Talley, Burdette, and Whiteside claims, and the suit brought by Goodman.
"The foregoing recovery to be subject to a credit in favor of the plaintiff against the defendant for $723.62, with interest from 9 March, 1932. Notwithstanding anything in the stipulations and entries heretofore made and entered, the plaintiff contends that it is not liable for the payment of attorney fees incurred by the defendant in the Goodman case, and as a basis for this contention offers the following portions of letters, marked `Plaintiff's Exhibit B.'
"It is agreed, and a jury trial being waived, the court finds as a fact that the negotiations between the plaintiff and defendant with respect to furnishing counsel to defend the Goodman suit were as shown by correspondence, which has been introduced in evidence as `Plaintiff's Exhibit B,' and the above stipulations and agreements are made with the reservation that the plaintiff shall be entitled to contend in the *Page 664 
Supreme Court that the facts being as shown by said correspondence, it is not liable to the defendant for the attorney fees paid on account of the Goodman suit." (Correspondence set forth.) "The plaintiff's motion to amend the pleadings is allowed. Thomas J. Shaw, Judge Presiding. This 5 May, 1934."
The judgment of the court below is as follows: "This cause came on to be heard before Thomas J. Shaw, judge presiding, and a jury, at the 30 April, 1934, Special Term. Proceedings were had, stipulations and agreements were entered into, and rulings were made by the court, as appears upon the record of same which is attached to this judgment. Upon the said proceedings, stipulations, agreements, and rulings the court finds and holds that the defendant is indebted to the plaintiff in the sum of eight hundred seventeen and 81/100 dollars ($817.81), which includes interest to 30 April, 1934, and that the plaintiff is indebted to the defendant in the sum of four thousand four hundred twenty-five and 79/100 dollars ($4,425.79), which includes interest to 30 April, 1934; that the amount of defendant's indebtedness to the plaintiff should be offset against the amount of plaintiff's indebtedness to the defendant, leaving a net amount due by the plaintiff to the defendant of three thousand six hundred seven and 98/100 dollars ($3,607.98), with interest from 30 April, 1934. Upon motion of Tillett, Tillett Kennedy, attorneys for the defendant, it is ordered, adjudged, and decreed that the defendant recover of the plaintiff the sum of three thousand six hundred seven and 98/100 dollars ($3,607.98), with interest from 30 April, 1934, and the costs of the action, to be taxed by the clerk. This 5 May, 1934. Thomas J. Shaw, Judge Presiding."
The plaintiff's exceptions and assignments of error are as follows: "(1) That the court, at the close of the evidence of the defendant on its counterclaim, overruled the plaintiff's demurrer to the defendant's evidence upon the counterclaim and its motion to dismiss the counterclaim as of nonsuit. (2) After hearing the arguments of counsel, the court ruled that the paper-writing offered in evidence by the defendant, marked `Defendant's Exhibit No. 1,' was the contract between the parties, and that under the terms and provisions of the contract covered damages to property by blasting, and that plaintiff would be liable to the defendant for damages, if any, caused by blasting or explosion, as well as for expenses reasonably incurred by the defendant in the settlement of such matters. (3) That at the close of all the evidence the court overruled the plaintiff's demurrer to the defendant's evidence on its counterclaim, and motion for judgment as of nonsuit upon the counterclaim then made. (4) That the court entered a judgment in favor of the defendant, as appears in the record."
Appeal was duly taken to the Supreme Court. The necessary facts will be set forth in the opinion. *Page 665 
Trial by jury was waived. The whole controversy was reduced to two questions: (1) Did the policy and/or the certificate cover the losses of the defendant set out in its counterclaim? (2) What was the amount of those losses? The judge ruled as a matter of law that the policy and/or certificate covered the losses. The amounts of the losses were fixed by an agreement of the parties. Judgment was entered on the judge's ruling and the agreement of parties. The judgment awarded the defendant the difference between the fixed amounts of the defendant's losses and the amount of the premiums admittedly due from the defendant to the plaintiff.
From this judgment the plaintiff appealed to this Court. The plaintiff contended that as a matter of law neither the policy nor the certificate of liability insurance covered the particular losses of the defendant enumerated in its counterclaim. We cannot so hold.
Harrison-Wright Company, the defendant, is a corporation engaged in the general contracting business extending over a number of states. While it was engaged in laying sewer pipes for the city of Greenville, S.C., certain damage was done to property owners, and one resident of Greenville, Mrs. Goodman, claimed that she suffered personal injuries, all arising out of blasting which was done by Harrison-Wright Company in removing rock in connection with the sewer construction.
The material part of the property damage certificate (Manufacturers and Contractors Form), issued by plaintiff to defendant, which is printed as follows: "Property Damage Certificate. (Manufacturers and Contractors Form.) . . . Does hereby agree, in consideration of the estimated advance premium shown in the schedule on the reverse side hereof, insuring agreements with the assured named and described in said schedule, subject to the conditions and agreements hereinafter provided, as respects damage to or the destruction of property of every description. . . . (1) To pay, within the limits as specified in Item 4 of said schedule, the loss from the liability imposed by law upon the assured for such damage to or destruction of property so caused (a) while within or upon the premises described in said schedule or upon the sidewalks or other ways immediately adjacent thereto and caused by reason of and during the prosecution of the business operations of the assured as described in said schedule; (b) while elsewhere if caused by reason of and during the prosecution of the business operations of the assured as described in said schedule and conducted at the premises described in said schedule, or by employees engaged as such in said operations who are required in the discharge of their duties to be away *Page 666 
from said premises. For the purpose of this insurance `business operations' shall include operations incident or appurtenant thereto."
"Exclusions II. . . . (3) This certificate does not cover any loss on account of accidents due to or caused by" (naming many) "(i) an explosion of any character."
"Schedule referred to in property damage certificate. Item 1. Name of the assured: Harrison-Wright Company. . . . Item 3. The business operationsand the premises insured under this certificate are correctly described asfollows: Description of business operations to be insured: Sewerconstruction — all operations — excluding tunnelling, except atstreet crossings." (Italics ours.) . . . Item 4. The company's liability under this certificate on account of any one accident resulting in damage to or destruction of the property of one or more persons shall be the actual value of the property damaged or destroyed at the time of such damage or destruction, together with the loss of use thereof, but in no event in excess of the total sum of one thousand dollars. Countersigned at Charlotte, N.C. Horace Davis, Inc., Gen'l Agent. By: Horace Davis, Authorized Agent."
The following is not on printed form, but typewritten: "Sewerconstruction — all operations — excluding tunnelling, except atstreet crossings. " It will be noted that Item 3 says: "The business operations and the premises insured under this certificate are correctlydescribed as follows:"
In clear language we have: "The business operations and the premises insured under this certificate are correctly described as follows: description of business operations to be insured." The following is typed: "Sewer construction — all operations — excluding tunnelling, except at street crossings."
The defendant wanted insurance to protect it in sewer construction— All operations — what is the meaning of All? Webster's New International Dictionary defines the word as follows: "The entire thing; everything included or concerned; the aggregate; the whole; totality."
Then is added, "excluding tunnelling, except at street crossings." If the insured and the insurer had wanted a further exclusion, how easily there could have been added "an explosion of any character." The typed language correctly described the business operations for which defendant was insured.
The question is, whether these words, "sewer construction — all operations," which were inserted with the typewriter and written into the policy, were words which the parties chose as directly appropriate, or whether certain printed words in other parts of the contract were to be considered as overruling and setting at naught this clear language. We think not. *Page 667 
The court below held: "That the paper-writing offered in evidence by defendant, marked `Exhibit 1,' was the contract between the parties, and that under the terms and provisions of the contract it covered damages to property by blasting, and the plaintiff would be liable to the defendant for damages, if any, caused by blasting or explosion, as well as for expenses reasonably incurred by the defendant in the settlement of such matters."
It was said on the argument, and appears in defendant's brief, that the policy was fourteen feet in length and the Insurance Company's Manual contains several hundred pages. We think the manual immaterial.
G. T. Spruce testified: "In January and February, 1932, I was superintendent of construction for Harrison-Wright Company at Greenville, S.C. We were laying sewer in the northern section, and in connection withthat sewer it was necessary to do some blasting. We dug our first sewer and did our first blasting along Ashley Avenue, on which street were located the Crisp, Talley, Burdette, and Whiteside houses. Just about the time we finished this sewer we started digging an outfall in a hollow some distance away from Ashley Avenue. As an incident to digging that sewer, it becamenecessary to do some blasting down in the hollow. The damages complained of by Crisp, Talley, Burdette, and Whiteside resulted from blasting done on Ashley Avenue, and the damage done to the Goodman house was done by the blasting in the hollow. It was from twelve to fifteen hundred feet from Ashley Avenue to the Goodman house across the hollow; it was approximately four hundred feet from the place we blasted on Ashley Avenue to the place we blasted in the hollow to the Goodman house."
The wishes of defendant were simple. It wanted insurance to protect it in the kind of work above described. It goes to the agent of plaintiff in Charlotte, N.C. and obtains from him a policy for a year effective from 4 May, 1931. It appears that the defendant was solvent, and had considerable dealing with plaintiff. The fixing of the premium was with the company. We think 6301 of the manual was put there to guide the local agents as to rates, etc. The manual was not made a part of the contract. It starts out, "General Instruction." To whom? The agents.
In Miller v. Missouri State Life Insurance Co. (Missouri), 153 S.W. 1080, the Court said: "The manual giving these definitions was not a part of the policy, nor was it mentioned or referred to therein; yet, if its provisions were to have the effect desired by defendant, they would have become one of the principal parts of the contract. To have had this effect, they should have been embodied in the face of the contract, or referred to therein and made a part thereof in plain, unmistakable *Page 668 
terms. McDonald v. Insurance Co., 154 Mo. loc. cit., 628, 629, 55 S.W. 999; Elliott v. Safety Fund Life Ins. Co., 76 Mo. App. 562; 1 Joyce on Insurance, sec. 191."
In 1 Couch, Cyc. of Insurance Law, part of sec. 161, it is said: "Obviously definitions given in an underwriter's manual, of which insured had no knowledge and which are not embodied in his policy, are not binding upon him."
We think the language controlling and predominant: "Sewer construction — all operations — excluding tunnelling, except at street crossings." It goes without saying and it is a matter of common knowledge that in a Piedmont city like Greenville, S.C., that in "sewer construction— all operations," that blasting would be necessary. In the typed agreement, we think blasting was included.
In Kenan v. Motor Co., 203 N.C. 108 (110): "The policy uses the broad language `all other employees,' etc. If the clause in question is ambiguously worded, so that there is any uncertainty as to its right interpretation, or if for any reason there is doubt in our minds concerning its true meaning, we should construe it rather against the defendant, who was its author, than against the plaintiffs, and any such doubt should be resolved in favor of the latter, giving, of course, legal effect to the intention, if it can be ascertained, although it may have been imperfectly or obscurely expressed. Walker, J., in Bray v. Insurance Co., 139 N.C. at p. 393; Allgood v. Insurance Co., 186 N.C. at pp. 420-21." Jones v.Casualty Co., 140 N.C. 263; Johnson v. Insurance Co., 172 N.C. 142;Smith v. Fire Insurance Co., 175 N.C. 314; Underwood v. Insurance Co.,177 N.C. 327.
In Conyard v. Insurance Co., 204 N.C. 506 (507), speaking to the subject, we find: "The rule of construction is, that when an insurance policy is reasonably susceptible of two interpretations, the one more favorable to the assured will be adopted. `The policy having been prepared by the insurers, it should be construed most strongly against them.' Bankv. Insurance Co., 94 U.S. 673; Jolley v. Insurance Co., 199 N.C. 269,154 S.E. 400; Underwood v. Insurance Co., 185 N.C. 538,117 S.E. 790." Hallock v. Casualty Co., ante, 195.
It may also be noted that the form language, "an explosion of any character," may be reconciled with the typed language. In Bolich v.Insurance Co., 205 N.C. 43 (46-7), is the following: "The word `explosion' is variously used, and is not one that admits of exact definition, having no fixed or definite meaning, either in ordinary speech or in the law. 25 C. J., 178. It implies, however, a sudden expansion of a liquid substance, with the result that the gas generated by the expansion escapes with violence, usually causing a loud noise. The word as used in a policy of insurance should be construed in its popular sense, as *Page 669 
used by ordinary men, and not in a scientific sense as used by scientific men. There was evidence at the trial of this action which tended to show that the hot water which struck the plaintiff in the face and injured his eyes was forced out of the radiator by an explosion in the automobile."
We think perhaps there is a distinction between the use of the words "an explosion of any character" and blasting. In ordinary parlance, we say blasting rock, we do not mean an explosion like the explosion of an engine.
In Baum v. Insurance Co., 201 N.C. 445 (448-9), is the following: "InBouchard v. Dirigo Mut. Fire, etc., Co., 113 Me. 17, L.R.A., 1915D, 187, it is held: `That both clauses should be construed in the light of the entire contract, the situation and character of the property insured, and the natural and necessary uses to which it must be put by the owner, and the application of this rule of construction confirms the inference already drawn from the language of the clauses themselves. That the policy is not avoided when the use made of the prohibited articles or the general use and operation of the property is necessarily incident to the business of the insured, and therefore presumed to be recognized and impliedly permitted by the insurer.'" S. c., 204 N.C. 57. Collins v. Ins. Co., 79 N.C. 279. The case of Johnston v. Niagara Fire Ins. Co., 118 N.C. 643, is distinguishable from the present case.
In Clark on Contracts, at page 407, it is said: "Where, as in the use of printed forms, a contract is partly printed and partly written, and there is a conflict between the printing and the writing, the latter will control."
In May on Insurance, Vol. 1, part sec. 177, is the following: "These written clauses, nevertheless, contain the elements of the contract, and being framed under the immediate eye of the parties, and with special reference to the exigencies of the particular contract, and to the terms agreed upon, they sometimes present a contract to which some of the printed parts of the policy are inapplicable. And as effect must be given to the acknowledged intentions of the parties, these written clauses must necessarily supersede and control such of the printed clauses as would, if enforced and literally applied, be inconsistent with them."
The next question: The court below held that plaintiff company was liable for expenses reasonably incurred — that is, the attorney's fees paid in the Goodman case. We see no error in this.
The "Defendant's Exhibit No. 1," Public Liability Policy, provides: "III. To defend in the name and on behalf of the assured any suits which may at any time be brought against him on account of such injuries, including suits alleging such injuries and demanding damages therefor, although such suits, allegations, or demands are wholly *Page 670 
groundless, false, or fraudulent. IV. To pay (a) all costs taxed against the assured in any legal proceeding defended by the company according to Insuring Agreement III above; (b) all interest accruing upon such part of any judgment rendered against the assured as is not in excess of the company's limit of liability as hereinafter expressed, and until the company has paid, tendered, or deposited in court its part of such judgment; (c) and all expenses incurred by the company for investigation, negotiation, and defense. . . . Action against company: F. No action shall lie against the company to recover upon any claim or for any loss under this policy, unless brought after the amount of such claim or loss shall have been fixed and rendered certain either by final judgment against the assured after trial of the issue or by agreement between the parties with the written consent of the company, nor in any event unless brought within two years thereafter."
The property damage, under Item 4, in the Property Damage Certificate, cannot be in excess of the total sum of $1,000 on account of any one accident. An action was brought against the defendant by Mrs. Goodman for both personal injuries and property damage in the same suit.
The plaintiff, in its brief, says: "In the case of Byrd v. GeorgiaCasualty Co., 184 N.C. 224, the North Carolina Court held that an insurance company was not liable for the expense incurred by the insured in defending a suit for damages not covered by the policy. If, on the other hand, the Property Damage Certificate containing the specific exclusion of loss from property damage caused by explosion covered such loss, the authorities seem to indicate that the plaintiff would be liable for money expended by the defendant on account of the defense of the property damage phase of the Goodman action. It is submitted, however, that in no event is the plaintiff responsible under the Public Liability Policy for that portion of the attorney's fees which is properly assignable to the defense of the personal-injury phase of the action brought by Mrs. Goodman."
The record discloses that a jury trial was waived, and it was left to the court below to determine from the correspondence between the attorneys, together with the terms of the policy, whether the insurance company is liable for these fees. In so far as this finding involves any questions of fact, they are conclusive.
It may be noted that before the Goodman suit was commenced in South Carolina, Harrison-Wright Company had called upon the insurance company to take charge of all claims preferred against the contractors for personal injury and property damage alleged to have been caused by the blasting made necessary in the excavations for sewer. The insurance company caused its adjuster, Eden, to write the letter which is set forth in the pleadings and which denies all liability either for *Page 671 
personal injury or property damage upon the ground that neither comes within the purview of the contract; and the insurance company declined to investigate these claims, or have anything to do with the matter.
It is alleged in paragraph 8 of the answer and counterclaim of defendant that certain damage was done by blasting, to several property owners, and that Harrison-Wright Company called upon the insurance company to take charge of these claims, but that it "refused to assume any liability or to take any part in any settling or otherwise disposing of the claims made by the property owners."
It is further alleged in respect to the Goodman suit that the refusal of the insurance company to take charge of this case made it necessary for the insured to employ a firm of lawyers in Greenville, S.C., and its local counsel in Charlotte, N.C. to represent it in that suit, and in the fourteenth paragraph of the insurance company's answer to the amended counterclaim it is admitted that after this refusal of the insurance company to employ attorneys "it became necessary for the defendant to defend the said action, and that for this purpose it employed as its counsel Hicks Johnston, of Greenville, S.C., and Tillett, Tillett 
Kennedy, of Charlotte, N.C. to represent it in said action, and to do all things necessary and proper to be done to defeat a recovery on the part of the said Mrs. Goodman."
In regard to the correspondence, we do not think it necessary to go into detail. It appears from the correspondence that while Mr. Hayden, general counsel, had, in his first letter, notified counsel for Harrison-Wright Company, and had notified Harrison-Wright Company itself, that the company would withdraw any denial of liability for the personal injury alleged to have been suffered by Mrs. Goodman, yet when counsel for Harrison-Wright Company declined to allow counsel for the insurance company to have complete control of the case, then the insurance company, through the local attorney, notified Harrison-Wright Company that the insurance company would not be responsible for any judgment rendered in the case — that is, would not only disclaim liability for property damage, but would refuse to pay any damage that might be allowed for personal injury.
In the correspondence, counsel for Harrison-Wright Company gave as a reason for not allowing counsel for the insurance company to have complete control of the case, because counsel, without any intention of doing any wrong, might minimize damage to the person and magnify the damage to the property; and besides, might contend that all of the injury was caused by one blast of dynamite, and thus bring the property damage within the provision of the policy that restricted the damage for one accident to $1,000. If the attorneys for the insurance company had appeared in the case and had control of it, they could not have *Page 672 
accomplished more than the attorneys who actually appeared. These attorneys succeeded in having the jury in the Goodman case find that there was no damage to the person of Mrs. Goodman. The damage that might be found by the jury for injury to property these attorneys did not at that time regard as of importance to the insurance company because of the fact that they claimed that the property damage was not within the provisions of the policy. Insurance company's refusal to pay and attempt to evade payment of attorney's fees in the Goodman case came too late.
When the insurance company wrote the Eden letter entering a positive and unequivocal denial of any responsibility, Harrison-Wright Company were entitled to treat this as a final denial; and this right to treat the Eden letter as final is confirmed by the averment in the present answer to the effect that its offer to defend the Goodman suit was upon the express condition that it should not be liable for any judgment.
In Ohio and Miss. Ry. Co. v. McCarthy, 96 U.S. 258 (267-8), the Court said: "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law." Robb v. Vos, 155 U.S. 13,39 L.Ed., 52.
The defendant company, having refused to defend the Goodman suit, is liable for all the reasonable costs and expenses, including attorney fees, which the plaintiff incurred in defending the suit.
In Lowe v. Fidelity and Casualty Co., 170 N.C. 445, it is said: "The defendant appeals because the judge rendered judgment in favor of the plaintiff receiver for costs, expenses, and attorney's fees incurred by plaintiff in defending the Marcus suit. . . . The contract makes it the duty of defendant, at its expense, `to defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim, whether groundless or not, for damages on account of bodily injuries or death suffered, or alleged to have been suffered, through the assured's negligence, by the persons described in subsections (a) and (b) of the preceding paragraph, at the places and under the circumstances therein described, and as the result of an accident occurring while the policy is in force.' The failure of the defendant to defend the suit, after repudiating its liability to the assured, constituted a distinct breach of contract and justified the plaintiff in defending it at his own expense.Beef Co. v. Casualty Co., 201 U.S. 173. These costs and expenses constitute a primary liability of defendant that plaintiff may recover as damages for the breach of the contract. Power Co. v. Casualty Co.,153 N.C. 279." *Page 673 
In 5 Couch Cyc. of Insurance Law, at page 4108, it is said: "But an insurer cannot deny liability as against the insured on the ground that the injured employee was not covered by the policy and at the same time insist on controlling the defense, since its right to defend arises only by virtue of its contract."
In 7 Couch Cyc. of Insurance Law, sec. 1875 (e), at page 6255, it is said: "If the insurer refuses to defend a suit against the insured under the policy stipulations and insured is compelled to undertake the defense and does so, insurer is liable for the amount of the judgment and expenses incurred in conducting said defense."
Under plaintiff's contract with defendant, in a matter of so grave importance to defendant, plaintiff cannot be permitted to "blow hot and cold" in the same breath. The briefs in the case were exhaustive, well prepared, and covered every angle of the controversy. We have read the record and the briefs with care. We see no error in the judgment of the court below, and it must be
Affirmed.