No. 14,899.

United States Casualty Company by Brown, Agent *v.*
Daugherty.

(109 P. [2d] 1059)

Decided January 6, 1941. Rehearing denied February 3, 1941.

Messrs. Blount, January & Yegge, Mr. Grant E.
McGee, for plaintiff in error.

Mr. Addison M. Gooding, for defendant in error.

*In Department.*

Mr. Justice Young delivered the opinion of the court.

The parties are before this court in reverse order of
their appearance below. For convenience they are here-
in designated as plaintiff and defendant.

Plaintiff, a plumbing contractor, sued defendant casualty company in the justice court for $150 alleged to be due him on a certain insurance policy and property damage endorsement attached thereto insuring him, with certain exceptions, against loss from the liability imposed by law upon him for damages on account of injury to or destruction of property of the Harbor Hotel in Steamboat Springs, incident to his installation and the operation of a hot water heating plant. Plaintiff had judgment in the justice court. Defendant appealed to the county court, where, upon trial of the cause to the court without a jury, plaintiff again prevailed and judgment was entered in his favor for $150 and costs. To reverse this judgment defendant prosecutes a writ of error.

A number of errors are assigned, but in the view we take of the case only the first and the third require consideration. These assignments predicate error on the court's holding that the loss sustained was within the coverage of the policy and that there was sufficient evidence to sustain a judgment for plaintiff. Defendant, by repeated objections to the admission of testimony and by motion for nonsuit at the close of plaintiff's case, raised the issue presented by these assignments.

██ It appears from the record that on or about the second of February, 1940, the Harbor Hotel had been completed and the heating plant had been installed by plaintiff. On this date an air lock developed in the system. Plaintiff was sent for and in attempting to release, and while working with, a valve, called in the record "a swing L" or "a balancing L," for the purpose of adjusting it, the packing blew out and water above the boiling point to the amount of twelve gallons flooded one of the rooms, ruining the rug, a guest's hat, and a wool blanket which plaintiff threw over the pipe fitting to check the water flow until he could cut off the pressure in the boiler room which required about fifteen minutes.

The "swing L," from photographs appended to defendant's brief, appears to be an elbow of pipe bent or

cast at right angles and threaded so that other pipes may be attached to it. Under questions from his counsel the plaintiff described it functions as follows:

"Q. Now, you referred to a swing L, or what else? A. A balancing L, or a gauge. In order for a forced hot water system to work, the system has to be balanced, regardless of the equal amount of drainage or elevation that each radiator has, it takes a balance to make each radiator heat evenly, and that is the purpose of this balancing L or swing L.

"Q. Explain to the court the point of installation, function and method of operation of that balancing L? A. It is placed on a return pipe from the radiator. It is a couple of feet from the radiator and others are within for or five inches from the bottom of the radiator. This one was possibly eight inches from the return end of the radiator.

"Q. Now, how does it operate? What does it do? A. It balances the system.

"Q. How? A. There is a butterfly inside which gauges the flow of water going through the L."

There is a threaded hole at the point of the elbow of the "swing L" into which is screwed a threaded plug with a slot so it can be moved in or out with a screwdriver to regulate the valve inside. The water and steam which caused the damage escaped into the room through this "balancing L" when the packing of the valve blew out while plaintiff was trying to adjust it to relieve an "air lock."

The provisions of the insurance contract between the parties applicable to the issue here considered are as follows:

"This Endorsement * * * further, shall not cover damage or destruction if * * * (6) due to the discharge, leakage, overflow or precipitation of water or steam from automatic sprinkler systems, plumbing systems, plumbing tanks, steam or hot water heating pipes or radiators * * *."

Plaintiff testified that the "swing L" from which the water and steam escaped is neither a hot water pipe nor a radiator. Unquestionably it was a part of the hollow continuous metal conduit through which the hot water was passed in carrying on the heating process. To say that the water which escaped from this elbow did not escape from a hot water heating pipe is a construction of the exclusion clause of the policy and of the evidence in the record so hypertechnical that we cannot approve it. Giving to the words of this clause in the policy their usual and ordinary meaning requires that the clause be construed in accordance with the contention of defendant. The damages for which recovery is sought were not within the coverage of the policy.

Judgment reversed.

MR. CHIEF JUSTICE HILLIARD, MR. JUSTICE KNOUS, and MR. JUSTICE BURKE concur.