No. 14,982.

WOOLVERTON *v.* LONDON GUARANTEE AND ACCIDENT COMPANY.

(126 P. [2d] 494)

Decided May 11, 1942.

Messrs. ENOS, DITTMAN & MORRATO, for plaintiff in error.

Mr. WM. E. HUTTON, Mr. J. P. NORDLUND, for defendant in error.

*In Department.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS case is before us on writ of error to review a judgment of the district court of the City and County of Denver in favor of defendant in error, hereinafter for convenience designated as garnishee or company. Plaintiff in error was the attaching creditor below, to whom we will refer as plaintiff.

The present proceeding is ancillary to an action in which plaintiff obtained a judgment against Ray Wilson, Inc., for damages incident to the death of her husband resulting from accidental injuries sustained by him when he came in contact with the moving propeller of an airplane from which he had just alighted after making a short flight as an invited guest. The plane and the Park Hill Airport where the accident occurred were both operated by Ray Wilson, Inc. Execution was issued on the original judgment, was returned unsatisfied and garnishee summons was then issued and served upon the company which had furnished a liability insurance policy to the Wilson corporation. The company answered all of the interrogatories attached to the summons in the negative, which answers were traversed by the plaintiff. From the issues thus framed and after due hearing, the judgment now here for review was entered in favor of the garnishee.

It is conceded by all parties that the policy involved was in force at the time of the accident and that plaintiff is entitled to recover from the garnishee only in the event it is liable to the Wilson corporation under the terms of its contract. A provision in the policy gives a judgment creditor of assured a right of action against the insurer in the event that execution on a judgment against assured is returned unsatisfied.

Pertinent provisions of the policy issued by the company on which plaintiff seeks recovery are as follows: (The Policy is printed throughout, except where typing is indicated by italics.

"No. AP *1003* . Airport Liability Policy

"London Guarantee and Accident Company, Limited.

A Stock Company

(hereinafter called the Company)

"Has issued this Policy subject to the Statements made by the Named Assured in Items 4 to 13 inclusive, which Statements are Statements of Fact known to and warranted by the Named Assured to be true, and this Policy is issued by the Company relying upon the truth thereof.

"Section I — Schedule of Statements

\* \* \*

"4. The location of the premises covered by this Policy, the purposes for which such premises are used, the kind of coverage in effect, and the premium are as follows:

| Location of Premises by Street and Number, Town and State | Purposes for which Premises are Used | Premium | |
|---|---|---|---|
| | | Premium for Agreement 1, Bodily Injuries | Premium for Agreement 2, Property Damage |
| *Park Hill Airport, Denver, Colorado, including two metal and brick hangars, administration and office building and fabricating shop* | *Flying field housing of small aircraft and school of instruction.* | *100.00* | *66.50* |

"Agreements 1 (Bodily Injuries) and 2 (Property Damage) shall be effective only in the event that the premium therefor is entered separately in this Statement, and included in the total advance premium.

"Minimum Premium *$75.00*

"Total Advance Premium *One Hundred Sixty-six and 50/100 Dollars $166.50*

"5. Business conducted by Assured on the premises is as follows: *Commercial aircraft operations.*

"6. Nature of business conducted by others on the premises is as follows: *None.*

"7. The Assured's interest in the premises is as follows: *Lessee.*

"8. The Assured occupies the premises, except as follows: *No exceptions.*

"9. The Assured does not sell or permit the sale on the premises of gasoline or oil except as follows: *Local retail sales only.*

"10. The Assured does not direct aircraft traffic (by radio or otherwise) except as follows: *No exceptions.*

"11. The Assured does not undertake any repairs to aircraft except as follows: *Local repair depot.*

"12. No Company has cancelled or declined to issue or renew liability insurance on this risk during the past three years, except as follows: *No exceptions.*

"13. No Company has insured this risk during the past two years, except as follows: *Firemen's Fund Indemnity.*

"14. There is no other general liability insurance carried by the Assured on the premises, except as follows: *No exceptions.*

"Section II — Agreements

"Does hereby agree with the Assured herein named, subject to the limitations and conditions herein contained, as respects accidents occurring, while this Policy is in force, upon or over the Assured's premises described in Statement 4 or upon sidewalks, areas or other ways immediately adjacent to said premises, by reason of the use, maintenance, ownership or control of said premises, including making of ordinary repairs and ordinary alterations thereto, or by reason of the Assured's business operations described in Statement 5 conducted on said premises:

"1. Bodily injuries. To pay, within the limits specified in Statement 3 (a) [$5000.] the loss from the liability imposed by law upon the Assured for damages (including consequential damages) on account of bodily injuries, including death resulting at any time therefrom, suffered or alleged to have been suffered by any person or persons not employed by the Assured, as a result of such accidents.
* * *

"7. Exclusions. This Policy does not cover:
* * *

(c) * * * (4) the existence, maintenance or use of any watercraft or aircraft owned, hired or controlled by (but not excluding the temporary direction of aircraft not owned or hired by the Assured which it may be necessary for the Assured to exercise in properly directing the operation of aircraft over and about the said premises) or in the custody of, the Assured or his agents, employes or pupils; * * * "

█ Counsel for both plaintiff and garnishee agree that the foregoing exclusion clause covers the accident in this case, and garnishee claims that by reason thereof it is not liable. Plaintiff contends that the general insuring clause, being the first paragraph in section II, and the exclusion clause when read together are ambiguous or wholly and irreconcilably repugnant; that therefore the policy should be construed most strongly in favor of the assured and recovery allowed. We thus come face to face with what counsel for plaintiff have described in their reply brief as the one and only issue involved in this case; namely, whether or not the general insuring clause and the exclusion clause are wholly and irreconcilably repugnant, for as stated by Jessel, M.R., in 1876: "A distinction has always been taken between a proviso which is repugnant to the covenant and therefore void, and a proviso which can be incorporated in the covenant, and be made consistent with it." *Williams v. Hathaway,* L.R. 6, Ch. Div. 544; quoted

with approval in *Royle Mining Co. v. Fidelity & Casualty Co.*, 126 Mo. App. 104, 103 S.W. 1098.

The lower court held, and we believe rightly, that looking at the policy alone without considering any extrinsic evidence the exclusion clause was merely a limitation or exception to the general insuring clause; that after subtracting all of the exceptions set forth in the exclusion clause there was still left an area covered by insurance, including "accidents occurring * * * upon or over Assured's premises described in Statement 4, or upon sidewalks, areas or other ways immediately adjacent to said premises, by reason of the use, maintenance, ownership or control of said premises, including making of ordinary repairs and ordinary alterations thereto."

Counsel for plaintiff in their reply brief contend that the immediately following words in the general insuring clause "or by reason of the Assured's business operations described in Statement 5 conducted on said premises" is in the disjunctive and not conjunctive, and that the clause is of equal dignity with the first clause above referred to and that the exclusion clause is repugnant to the second clause which follows the conjunction 'or' and is therefore void. Even if we adopt plaintiff's reasoning, it would still appear that the exclusion clause does not completely obliterate all of the coverage in the insuring clause referred to, for the exclusion clause in parenthesis in turn makes an exception and allows as coverage "the temporary direction of aircraft not owned or hired by the Assured which it may be necessary for the Assured to exercise in properly directing the operation of aircraft over and about the said premises." Aside from the item covered in this parenthesis, we are of the opinion that the general insuring clause covers a wider field of operations than that set forth in the exclusion clause, including the local repair depot shown in paragraph 11, the retail sales department shown in item 9 of the policy, the flying field, housing of small

aircraft, school of instruction, administration building and fabricating shop.

Attorneys for plaintiff rely here, as they did in the trial court, upon *Biwabik Concrete A. Co. v. U.S.F. & Guar. Co.*, 206 Minn. 239, 288 N.W. 394, and *Standard Accident Co. v. Harrison-Wright Co.*, 207 N.C. 661, 178 S.E. 235. In both those cases the exclusion clause of an insurance policy was disregarded and recovery permitted under the general insuring clause. In the *Biwabik case, supra,* recovery was allowed for damages resulting from an accident caused by horses, although the printed exclusion clause exempted liability growing out of the assured's use of horses. But in that case under the caption "Classification of Operations" the typewritten statement was "Sand and gravel digging, including drivers, chauffeurs and helpers," and the court concluded, both from the instrument itself and from the evidence in the case, that it was the intent of the parties to cover all of insured's operations, including the use of horses. The court laid some stress upon the fact that the negligence causing the injury to the third person was that of a driver in allowing the horses to escape. It further appeared that the premium was based on the payroll, which included drivers, chauffeurs and helpers. In the instant case it is evident that the premium was not based upon aircraft owned and operated by assured.

In the *Standard Accident Company case, supra,* the statement in the policy was as follows: "Item 3. Description of operations of insured: Sewer construction — all operations — excluding tunnelling except at street crossings." (Typed portion shown by italics). An exclusion clause eliminated accidents due to an explosion of any character. The court held that if an explosion were taken to include blasting, then the exclusions contradicted the typewritten portion. The court went on to say that explosion does not necessarily mean blasting.

We believe that, in addition to *Royle Mining Co. v. Fidelity & Casualty Co., supra,* the following cases are

more nearly in point and should control in this case: *Chicago-Coulterville Coal Co. v. Fidelity & Casualty Co.,* 130 Fed. 947; *Maryland Casualty Co. v. Texas Fireproof Storage Co.* (Tex.), 69 S.W. (2d) 826; *Carpenter v. Continental Casualty Co.,* 95 F. (2d) 634; *State ex rel. v. District Court,* 110 Mont. 250, 100 P. (2d) 932; *Lehr v. Professional Underwriters,* 296 Mich. 693, 296 N.W. 843. In these cases recovery was denied on facts very similar to those in the instant case. We also are of the opinion that to affirm the judgment of the lower court in this case is consistent with our decisions in *Swanbrough v. United Com. Travelers,* 66 Colo. 384, 181 Pac. 204; *Continental Casualty Co. v. Carver,* 91 Colo. 188, 14 P. (2d) 181; *United States Casualty Co. v. Daugherty,* 107 Colo. 192, 109 P. (2d) 1059.

It will be noted in the present case that in the first line of the policy as quoted, in large type, appear the words "Airport Liability Policy," and the exclusion clause is in as large type as the insuring clause, giving the insured as complete notice as possible of the kind of policy and the coverage. Plaintiff contends that, if the liability was to be limited to that of an airport policy, then the answer to item 5 should have been "Commercial *Airport* Operations" instead of "Commercial *Aircraft* Operations"; but if the business conducted by the assured on the premises was actually commercial aircraft operations, then such an answer would not have given a true idea as to the nature of the business of the assured, and if the assured was in fact engaged in commercial aircraft operations that was the indicated answer to give a truthful description of its business.

It appears on the face of the policy that the insured was occupying the premises insured as lessee. It likewise appears that this was not the first policy that insured had taken out covering the premises. There is nothing in the record to show that this policy of limited liability might not have been taken out to satisfy the terms of the lease covering the premises or for some

other equally good reason occurring to the insured. The policy is one of limited liability, not only by virtue of the exclusion clause but also by virtue of the insuring clause itself as it covers injury suffered by any person or persons "not employed by the assured." There is nothing to show but what the amount of the premium paid is commensurate with the coverage in the policy.

So far, we have considered this matter solely from an examination of the insurance policy itself. The record shows that testimony was offered by the garnishee and by plaintiff. All was stricken except that portion of the testimony of Mr. Wilson, plaintiff's witness, relating to the scope and nature of the business conducted by the assured. This extrinsic testimony only serves to confirm the foregoing interpretation of the policy.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE YOUNG, MR. JUSTICE KNOUS and MR. JUSTICE BURKE concur.