**GENERAL ACCIDENT FIRE and LIFE ASSURANCE CORPORATION, LIMITED, Plaintiff-Appellee,**

v.

**AKZONA INCORPORATED, and all subsidiaries affiliated, associated and allied companies, American Enka Company, Armak Company, Armira Company, Brand-Rex Company, and Organon, Incorporated, Defendants-Appellants.**

**No. 79–1095.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1979.

Decided May 27, 1980.

As Modified on Denial of Rehearing July 7, 1980.

Earl H. Nemser, New York City (Landon Roberts, Asheville, N.C., Howard R. Hawkins, Jr., New York City, Roberts, Cogburn & Williams, Asheville, N.C., Cadwalader, Wickersham & Taft, New York City, on brief), for defendants-appellants.

Albert L. Sneed, Jr., Asheville, N.C., (O. E. Starnes, Jr., Van Winkle, Buck, Wall, Starnes, & Davis, P.A., Asheville, N.C., on brief), for plaintiff-appellee.

Before PHILLIPS and SPROUSE, Circuit Judges, and WALTER E. HOFFMAN, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

WALTER E. HOFFMAN, Senior District Judge:

In this diversity case, plaintiff-appellee, General Accident Fire and Life Assurance Corporation, Limited (the insurance company), sought a declaratory judgment that it was not liable under an all-risks insurance policy issued to defendants-appellants (Akzona) for losses resulting from a flood which occurred on November 6, 1977, causing damage in excess of $15,000,000 at the American Enka manufacturing plant in Enka, North Carolina. Akzona moved to dismiss the insurance company's action and counterclaimed for $3,000,000, the limit for flood damage under the policy. The district court granted the insurance company's motion for summary judgment declaring that the policy's flood coverage was voided by virtue of the following warranty which was included in the policy:

"With respect to Flood and Earthquake at Enka, N.C., the deductible will be $500,000.00. *It is agreed that all barricades in openings in dikes will be in position prior to flooding at Enka, N.C. or no flood coverage will be provided.*" (Emphasis added).

The district court found that this provision was unambiguous, that Akzona failed to comply with it, and that, accordingly, the risk was excluded as a matter of law. We vacate and remand on the basis that the provision was ambiguous, thus creating an issue of factual interpretation and precluding summary judgment.

The facts are as follows: The Enka plant is located near Hominy Creek in Enka, North Carolina. Hominy Creek is subject to frequent flooding. In order to prevent flood damage to the plant, Akzona erected a dike, an elongated earthen mound more than eight feet high, between the creek and the plant. There are four passageways

through the dike, gates A, B, C, and D, through which pass a public road (State Highway Route 112), a foot path, and two railroad tracks. Built into the dike near the passageways are structures referred to as gate houses A, B, C, and D. The gate houses store specially fitted wooden boards, timbers, tools and other materials and equipment used to erect barricades across the passageways to prevent flood waters from flowing through the openings into the plant.

Akzona has an established procedure for closing the passageways. The creek's water level is constantly monitored and normally reads 2052.5 feet above sea level. When the water level exceeds 2057 feet, the point at which the creek breaks its boundaries, a flood alarm sounds. If the level of the water reaches 2059 feet, a barricade is erected in gate B. The other openings are less vulnerable to the initial flooding and are not closed until the water reaches a higher level. Since the construction of the dike in 1940, no flood waters have come into the plant. The insurance company knew of and its underwriter approved Akzona's flood control procedure.

Heavy rains fell on the night of November 5, 1977 and Enka flood control personnel were sent to their assigned posts. When the water in Hominy Creek overflowed its boundaries and rose to 2059 feet above sea level, the flood crew erected the flood gate in gate B. Apparently, there was no urgent need to erect the other three flood gates as the sea level gauge indicated that the water was rising at a slow pace. However, unbeknownst to the flood crew, an artificial dam of debris had formed upstream causing the water level readings at the plant to rise at a deceptively slow rate. This dam eventually broke and swept away a lumber yard. Debris from the lumber

yard formed another obstruction just upstream from the plant where the Route 112 bridge crosses Hominy Creek. This obstruction diverted the path of the water out of the creek bed and onto Route 112 running directly towards gate A, where the flood crew was in the process of closing that flood gate. As a result, it was impossible for the crew to close the diking system at gate A. The waters inundated the plant and caused extensive damage.

■ The insurance company moved for summary judgment declaring that it had no liability under the policy.[1] Akzona filed a cross-motion for summary judgment. The only issue before the district court was whether Akzona failed to comply with the flood warranty so as to abrogate the insurance company's liability for the flood damage.[2]

The insurance company contends that there was no flood coverage provided by the policy unless, prior to flooding, each of the four gates in the dike was closed by the erection of barricades, resulting in a continuous barrier protecting the plant from flood waters. The insurance company argues that the words "openings in dike" were intended to mean the gates A, B, C, and D, and the words "in position" mean that the "barricades" had to be placed in the gates so as to prevent the entry of flood waters. It is contended that since the gates were not closed prior to the flooding, as required by the policy, there was no flood coverage.

Akzona contends that the word "barricades" refers to the specially prepared wooden boards which were kept in the gate house and were to be fitted into place in the gates in case of flooding. The "opening in dikes" were the gates houses themselves. Therefore, argues Akzona, since the boards

1. The insurance company conceded for purposes of its motion that it drafted the disputed flood warranty. Having had its motion rejected by this court, the insurance company is no longer bound to that concession. *Cram v. Sun Ins. Office, Ltd.*, 375 F.2d 670, 673–74 (4th Cir. 1967). Thus, on remand, the dispute as to which party drafted the provision becomes an issue of fact.

2. In its briefs Akzona makes alternative arguments concerning waiver of the warranty provision and the effect of a "no control clause." These arguments were not included in Akzona's cross-motion for summary judgment, and we have no cause to address them on appeal.

were stored in the gate houses on November 6, 1977, they were "in position" and the requirements of the policy were met.

In adopting the insurance company's interpretation, the district court found that the insurance company had not been willing to assume the risk of loss if the gates were not closed before the flood waters reached the dike. The court concluded that the language of the warranty clearly and unambiguously provided that the barricades must be in position in the gates before the flood waters flowed through to the plant.

We find that the district court erred when it failed to give adequate consideration to the definition of "flooding" as provided in the policy. Had it done so, it would have concluded that more than one permissible inference as to the intent of the parties could be drawn from the language of the provision.

The district court found "flooding" to mean when "the flood waters flowed through to the plant". But the insurance policy defines "flood" as "the rising (including the overflowing or breaking of boundaries) of . . . streams and similar bodies of water . . . ."

When an insurance policy defines a term, that definition provides "the meaning which must be given to that term wherever it appears in the policy, unless the context clearly requires otherwise." *Wachovia Bank and Trust Co. v. Westchester Fire Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). Under the policy's definition, Hominy Creek overflows or "floods" at 2057 feet above sea level. Applying the insurance company's interpretation of the provision and the policy's definition of "floods", the warranty requires that the gates be closed "prior to" the overflowing of Hominy Creek.[3] Yet, it is uncontroverted that the insurance company knew of Enka's flood control procedure, which calls for the erection of barricades only *after* the creek overflows.[4]

This inconsistency between the flood control procedure, which apparently had the approval of the insurance company, and the flood warranty provision leads us to believe that there is more than one permissible inference as to the intent to be drawn from the language of the provision. Therefore, the question of the actual intention of the parties is a triable issue of fact. *See Bear Brand Hosiery Co. v. Tights, Inc.*, 605 F.2d 723, 726 (4th Cir. 1979).

It is not our duty to decide which of the party's interpretations of the policy is more reasonable. We find that either interpretation is permissible in light of both a technical reading of the policy and the actions of the parties. There being this substantial issue of fact, it was error for the district court to enter summary judgment. *See Cram v. Sun Insurance Office, Ltd.*, 375 F.2d 670, 673–74 (4th Cir. 1967) ("the intent of the parties to an ambiguous contract is a question of fact which cannot properly be resolved on motions for summary judgment." *Id.* at 674). Accordingly, the summary judgment in favor of the insurance company is vacated and the case is remanded for trial.[5]

VACATED AND REMANDED.

3. Such a condition would require rather absurd precautions. Enka would be required to close off a state highway and the other passageways immediately upon learning that the creek is rising, regardless of the probability that the creek will overflow its bank and reach the plant. The unreasonableness of closing off all of the gates any time the creek begins to rise is the reason Enka adopted a graduated flood control procedure. Under normal circumstances the creek would rise steadily and the flood crew would close the various gates as necessary.

4. In fact, the insurance company's underwriters indicated that if Enka complied with its flood control procedure, "then we won't have any problem at all, and the warranty should stay in effect."

5. Akzona contends that if the warranty provision is ambiguous then it must be interpreted in favor of coverage. It cites North Carolina case law which states that exclusions from coverage "are to be construed strictly so as to provide the coverage", *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 355, 172 S.E.2d 518, 522–23 (1970), and that where there is doubt as to the true meaning of a provision it should be construed "against the [insurance company] . . . , who was its author, [rather] . . . than against the [in-

sured] . . . ." *Standard Accident Ins. Co.
v. Harrison-Wright Co.,* 207 N.C. 661, 668, 178
S.E. 235, 239 (1935). Akzona argues that this
case law requires us to enter summary judg-
ment in its favor.

Since this is a diversity case, Akzona's asser-
tion that we must apply the substantive law of
the forum state, North Carolina, is correct.
*Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58
S.Ct. 817, 822, 82 L.Ed. 1188 (1938). However,
the issue with which we are dealing is proce-
dural rather than substantive. Summary judg-
ment is a procedural device which may not be
utilized so long as there is a "genuine issue as
to any material fact." Fed.R.Civ.P. 56(c).
Having a federal rule of civil procedure directly
applicable renders it unnecessary for us to con-
sider state law which may provide to the con-
trary. *Hanna v. Plumer,* 380 U.S. 460, 469–74,
85 S.Ct. 1136, 1142–45, 14 L.Ed.2d 8 (1965).
Because substantial issues of material fact re-

main to be decided, summary judgment should
not be entered in favor of Akzona. Moreover,
we are not convinced that state law would
require entry of summary judgment for Akzo-
na. Under North Carolina law, the goal of
construction is to arrive at the intent of the
parties when the policy was issued. *Woods v.
Nationwide Mutual Ins. Co.,* 295 N.C. 500, 246
S.E.2d 773 (1978); *see Standard Accident Ins.
Co., v. Harrison-Wright Co., supra,* 178 S.E. at
239 (Legal effect must be given to the parties'
" 'intention if it can be ascertained, although it
may have been imperfectly or obscurely ex-
pressed.' " quoting *Bray & Franklin v. Virginia
Fire & Marine Ins. Co.,* 139 N.C. 390, 393, 51
S.E. 922, 923 (1905)). Here, the intent of the
parties is in issue. Nor may a policy be con-
strued against its author when its authorship
has yet to be determined. *Compare* note 1,
*supra,* with *Standard Accident Ins. Co. v. Har-
rison-Wright Co., supra.*