No. 12,747.

CONTINENTAL CASUALTY COMPANY *v.* CARVER ET AL.
(14 P. [2d] 181)

Decided June 20, 1932. Rehearing denied September 12, 1932.

Messrs. Bartels & Blood, Mr. Arthur H. Laws, for plaintiff in error.

Mr. John R. Wolff, for defendants in error.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

The question here presented is the validity of a judgment obtained by the assignees of the victim of an automobile accident, against the insurer of the corporation which was the alleged employer of the driver of the offending car.

These parties appeared in reverse order in the trial court and are hereinafter referred to as there, or as the casualty company and the Carvers, respectively. The Graham Motor Company is referred to as the Graham company and the Carver Brothers Motor Company as the Carver company. The casualty company is an insurance company, the Graham company was an automobile company handling Reo cars in Denver. The Carver company operated a garage and sold cars in Boulder. The Carvers were president and secretary-treasurer of the Carver company, and they and their wives constituted

its board of directors and held all its stock. This company was in fact merely the Carvers incorporated. Prior to the trial hereof the company had ceased to operate as such and the individuals were running the business. H. A. Graham, hereinafter referred to as Graham, represented the Graham company, and William Bracy was general salesmanager of the Carver company on a salary plus a commission on all sales.

The casualty company issued a policy to the Graham company insuring it "against loss from liability imposed upon the assured by law for damages on account of bodily injuries, * * * accidentally suffered, or alleged to have been suffered, within the policy period, by any person or persons not employed by the assured; (1) By reason of the ownership, maintenance or use of any of the automobiles covered by this policy, as described in the schedule;" and containing certain conditions and limitations hereinafter referred to. It also contained a clause providing that in case of the insolvency or bankruptcy of the assured, a person injured, or his personal representative in case death resulted from the accident, might, after execution issued and returned unsatisfied, maintain an action against the casualty company. While this policy was in effect Graham was in Boulder negotiating with the Carver company concerning its taking the agency there for Reo cars. While his proposition was under consideration the Carver company's men were introducing him to prospective customers. He had parked his Reo demonstrator car and was talking to Bracy. The latter hailed one Childers, sought to interest him in the Reo, and the two got into Graham's car to demonstrate, Bracy driving. While thus occupied Bracy drove the car into the rear of a horse-drawn vehicle and injured one Wood, an occupant. Wood sued the Carver company and the Graham company. The latter, by its own attorneys, answered, but did not otherwise defend. Wood therein secured a joint and several judgment for $3,500. An execution was issued thereon and

levied on the property of the Carver company. October 21, 1928, Wood assigned this judgment to the Carvers. Thereafter said levy was withdrawn and the property released to the assignees, and some months later another execution was issued and returned nulla bona. Promptly thereafter the Carvers, as assignees of the Wood judgment, and as assignees of Wood's rights under the policy to sue direct, brought the instant action against the casualty company. Their position being that the latter is liable for the Wood judgment under the terms of the Graham policy, and that they are entitled to recover as assignees of Wood. A general demurrer to the amended complaint was overruled. Answer and replication followed and the cause was tried to the court. At the close of plaintiffs' evidence defendant's motion for a nonsuit was overruled. The court found generally for plaintiffs and gave them judgment for the amount of the Wood judgment, plus interest and the costs of both suits, a total of approximately $4,500. To review that judgment the casualty company prosecutes this writ.

The casualty company says, in substance: (1) The injury sustained by Wood was not covered by the policy; (2) Wood's right to sue the casualty company was not assignable; (3) the purchase by the Carvers of Wood's judgment was a payment and discharge thereof because contribution between joint tort feasors is unknown to the law. If the first of these contentions is correct, as we think it is, the others need not be noticed.

■ The policy in question specifically provided that it did "not cover any automobile * * * which is being driven by or is in charge of any person whose remuneration is not included in the estimate appearing in the schedule." The estimated number of employes "appearing in the schedule" is "various," their total "estimated" remuneration is $25,000, the rate per $100 based thereon is .90, and the "estimated" premium $225. The final premium on this policy was to be fixed by applying the schedule rate to the "entire remuneration earned

during the policy period by all employes of the assured.''
For this purpose the policy fixed arbitrary figures for the
remuneration of proprietors and officers. ''The remun-
eration of all other employes shall be included at the
actual amount earned.  *  *  *  At the end of the policy
period the actual amounts of such remuneration  *  *  *
shall be determined by an audit of the assured's books
and records.'' If these amounts exceeded the estimate
the assured should pay the balance, if less it should have
a refund. It is thus perfectly apparent that the amount
of premium on this policy had no relation to the assured's
earnings. It was based upon earnings of employes, and
for the purpose of figuring it actual earnings of actual
employes were taken, plus an arbitrary amount, as
agreed upon, for earnings of owners and officers. What-
ever compensation, if any, the Carver company might
have received had Bracy sold a Reo car to Childers as
a result of the demonstration in the course of which
Wood was injured, we cannot conceive how that com-
pensation could have been reflected ''in the estimate ap-
pearing in the schedule.'' This ''estimate appearing in
the schedule'' was an estimate of earnings of the Graham
company's employes. Bracy was an employe of the Car-
ver company, not the Graham company. If, at the time
of the accident, he was in any sense an employe of the
latter the relationship was such as could not have been
contemplated at the time the policy was written. Noth-
ing seems more clear to us than that this car which in-
jured Wood was then ''being driven by'' a ''person
whose remuneration'' was ''not included in the estimate
appearing in the schedule.'' Hence that car and that
injury were not within the terms of the policy.

■ It is earnestly contended, however, that the ques-
tion of Bracy's employment by the Graham company
was an issue in Wood's suit against the two motor com-
panies, was therein decided against them, and hence is
res judicata. The casualty company answers that, not
being a party to that litigation, it is not bound. The Car-

vers reply that it was in duty bound to appear therein under a clause of the policy which provides that notice of accidents, "causing loss covered hereby," claims for damages caused thereby, and suits for such claims, shall be given the casualty company and that it will "defend for the assured any suits, even if groundless, brought against the assured to recover damages," and that it had notice.

We assume that the casualty company, if sued by the Graham company, would be bound by the court's finding in the Wood case that Bracy was an employe of the Graham company. It must be borne in mind, however, that the Wood suit was an action in tort, and this is an action on contract. Bracy might have been an employe of the Graham company in such a sense as to make it liable for his tort, yet not such employe under the terms of the policy as to make the casualty company liable thereunder. The difficulty about the Carvers' reply to this proposition is that it assumes that Wood was a party to this clause of the policy binding the casualty company to defend. The general rule is that one who is not a party to a contract, and from whom no consideration moved, has no connection therewith. He can avail himself of its terms neither as a cause of action nor a defense. He may profit by its performance, or suffer from its breach, but he is still a stranger. 6 R. C. L., p. 881, §270. Unless the element of trusteeship is involved this remains the rule in England and some of the states, even where the contract is made expressly for his benefit. But in a majority of the states the latter fact now gives him an interest and a right of action. Id., p. 882, §271.

The utmost that Carvers can claim is that they stand in the shoes of Wood, and this clause of the policy concerning claims and suits was not made for his benefit. Had the casualty company, in compliance therewith, defended against his action, such defense would have been adverse and disadvantageous to him. Hence its failure

to keep its contract in that particular, if it so failed, does not concern him. It follows that, not being a party to that suit, nothing therein decided is res judicata as to it.

The judgment is accordingly reversed with directions to dismiss at the costs of defendants in error.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HILLIARD concur.