**E.B. ROBERTS CONSTRUCTION CO., C & W Manhattan Associates, a Texas Limited Partnership, Roland Walters, General Partner of Coogan & Walters, the General Partner of C & W Manhattan Associates, a Limited Partnership, Roland Walters, Trustee, Allied Bank of Texas, and K-Mart Corporation, a Michigan corporation, Petitioners,**

v.

**CONCRETE CONTRACTORS, INC., and Ideal Construction Service, Inc., Respondents,**

and

**Richard Frohlick Crane Service, Inc., the Continental Insurance Company, Mobile Premix Concrete, Inc., and Judith A. Kahle, Public Trustee of Adams County, Defendants.**

**No. 83SC63.**

Supreme Court of Colorado, En Banc.

Aug. 19, 1985.

George Alan Holley & Associates, P.C., Scott D. Albertson, Golden, for petitioners.

Daniel, McCain & Brown, Edward A. Brown, Jeffrey W. Ludwig, Brighton, for respondents.

LOHR, Justice.

We granted certiorari to review the judgment of the Colorado Court of Appeals in *Concrete Contractors, Inc. v. E.B. Roberts Construction Co.*, 664 P.2d 722 (Colo.App. 1982), a case arising out of a project to construct a K-Mart store in Brighton, Colorado. The Adams County District Court awarded damages to Concrete Contractors, Inc. (CCI) and Ideal Construction Service, Inc. (Ideal) against E.B. Roberts Construction Co. (Roberts), the general contractor, in the amount of $28,031 for work performed under a subcontract, and additional damages of $8,941 for profits lost when Roberts wrongfully terminated the subcontract. The trial court also decreed that the plaintiffs had a mechanic's lien in the amount of $28,031 based on the work performed. Roberts appealed, and the court of appeals affirmed. We granted certiorari to determine whether CCI and Ideal forfeited all rights to a mechanic's lien by wrongfully filing a lien statement for an amount exceeding the amount due. *See* §§ 38–22–123, –128, 16A C.R.S. (1982). We also elected to review on certiorari whether CCI, which was not a party to the written subcontract between Ideal and Roberts, could enforce the subcontract when CCI performed the work to be accomplished by Ideal pursuant to that agreement. We affirm the judgment.

I.

Roberts was hired as the general contractor on a project to build a K-Mart store in Brighton, Colorado. The store was to be constructed on land owned by C & W Manhattan Associates and encumbered by a deed of trust in favor of the Allied Bank of Texas.

On April 30, 1979, Roberts and CCI entered into a $224,410 lump-sum contract which obligated CCI, as a subcontractor, to perform the site concrete, building foundation, and asphalt paving work on the K-Mart project. CCI earlier had submitted to Roberts a bid proposal to do this and other work, in which CCI estimated unit prices for the various components of the job.

One provision of the contract obligated CCI to furnish a performance bond guaranteeing to Roberts and the Allied Bank that CCI would perform the contract, and a payment bond guaranteeing to Roberts and the Allied Bank that all of CCI's subcontractors, laborers and material suppliers would be paid. CCI could not obtain the necessary bonds. On June 15, 1979, Roberts, CCI and Ideal entered into a "Contract Amendment" whereby Ideal was substituted for CCI as the subcontractor in the April 30 contract. Ideal was able to acquire the necessary bonds, and they were executed on June 15 with The Continental Insurance Company as surety.

Harold Baumgartner testified that he was the owner and chief executive of CCI and a vice president of Ideal and that Ideal was a separate corporation from CCI. Baumgartner further testified that "we [CCI] occasionally run a job through that company [Ideal] for our higher-sized bonds." There is no other evidence in the record concerning the relationship between Ideal and CCI or the identity of the owners or officers of these corporations.

The record also is barren of any evidence of a formal agreement between Ideal and CCI, or among Ideal, CCI and Roberts, that

CCI would perform the concrete and asphalt work on the K-Mart project as required by the contract. Nevertheless, that is what the parties contemplated and that is what happened. Despite the fact that Ideal had been substituted for CCI as the subcontractor, CCI performed the work, billed Roberts for progress payments, and received such payments from Roberts.[1] In matters concerning the administration and progress of the job, CCI personnel dealt with Roberts personnel and vice versa. It is apparent from the record that, from the first, the relevant parties knew that CCI would be performing the subcontract work and all parties acted accordingly. The trial judge so found. Nothing in the written contract or the bonds, however, gives any indication of this arrangement.

CCI began work on the K-Mart project in July of 1979. CCI completed the building foundation and almost all of the site concrete work but did not begin the asphalt paving of the parking lot. In return, CCI received progress payments from Roberts. Roberts terminated the contract by telegram to Baumgartner on December 10, 1979, asserting that the subcontractor had breached the contract by failing to perform in a timely manner.

On January 28, 1980, CCI presented Roberts with a final invoice for $66,407.02, ostensibly representing the balance due for all work performed prior to termination of the contract. On February 26, CCI and Ideal jointly recorded a mechanic's lien statement in the office of the Adams County recorder, asserting a claim against the property in the amount of $66,407.02 for "labor and materials furnished and supplied." *See* §§ 38–22–101 to –133, 16A C.R.S. (1982 & 1984 Supp.) (general mechanics' lien statute).

In May of 1980, CCI and Ideal filed suit against Roberts, C & W Manhattan Associates, the Allied Bank and others, seeking to foreclose the mechanic's lien. The plaintiffs also asked for $66,407.02 in damages, plus interest and costs, for materials and labor supplied but not paid for by Roberts. The plaintiffs subsequently amended the complaint by adding a second claim against Roberts alone for breach of contract, seeking $25,000 in damages, plus interest and costs, representing profits lost because Roberts wrongfully terminated the contract. Roberts counterclaimed, asserting that the plaintiffs had breached the contract by failure to render timely and workmanlike performance and failure to pay a material supplier.[2]

Trial was to the court on January 21–23, 1981. At trial, the plaintiffs submitted their final summary of the amount due, totalling $49,992.40 allegedly owed by Roberts. According to Baumgartner, this figure included the amount due for unpaid work performed (the mechanic's lien claim) and the amount due for lost profits on work not performed (the breach of contract claim).

The district court issued a written order on April 3, 1981, containing findings of fact and conclusions of law. The court found that Roberts breached the contract when it terminated CCI, and awarded the plaintiffs $8,941 in damages, plus interest, representing profits lost because CCI was not allowed to perform the balance of the work required by the contract. The court also awarded the plaintiffs judgment against Roberts in the amount of $28,031, plus interest, representing the balance due for work performed by CCI and not paid for by Roberts, and decreed a lien on the property in favor of the plaintiffs in that amount. Roberts and the other defendants appealed. The court of appeals affirmed the particular rulings relevant here. *Concrete Contractors, Inc. v. E.B. Roberts Construction Co.*, 664 P.2d at 724–25.

On certiorari, Roberts and other defendants in the trial court (for convenience,

---

**1.** The exhibits reflect that Ideal received the initial progress payment, although the billing for that payment came from CCI.

**2.** Other counterclaims and cross claims followed. The court of appeals opinion details those claims and describes how they were resolved. *See also* footnote 3, below. They are not relevant to the issues before us.

referred to collectively as the "Roberts group") seek to overturn the judgment on the mechanic's lien claim, asserting that CCI and Ideal filed an excessive lien statement with knowledge that the amount was excessive, thereby causing a statutory forfeiture by the claimants of all rights to such a lien pursuant to section 38–22–128, 16A C.R.S. (1982). *See also* § 38–22–123, 16A C.R.S. (1982); *Concrete Contractors, Inc. v. E.B. Roberts Construction Co.*, 664 P.2d at 724–25. In addition, Roberts seeks to overturn the award of damages for lost profits, arguing that CCI could not enforce the subcontract because it was not a party to that agreement and that Ideal, although a party to the contract, did not suffer or prove any damages. *See id.* at 725. Roberts does not challenge the district court's conclusion that Roberts breached the contract, a conclusion affirmed by the court of appeals.[3] *Id.* at 725–26. We first address the forfeiture issue.

## II.

In 1975, the General Assembly adopted the following statute relating to mechanics' lien claims that are excessive in amount:

Any person who files a lien under this article for an amount greater than is due without a reasonable possibility that said amount claimed is due and with the knowledge that said amount claimed is greater than that amount then due, and that fact is shown in any proceeding under this article, shall forfeit all rights to such lien plus such person shall be liable to the person against whom the lien was filed in an amount equal to the costs and all attorney's fees.

Ch. 322, sec. 3, § 38–22–128, 1975 Colo. Sess.Laws 1420, 1421. When adopting section 38–22–128, however, the General Assembly did not repeal then-existing section 38–22–123, 16A C.R.S. (1982), which provides in relevant part:

[I]f any person files either of said statements for a lien for a larger sum than is due or to become due, in fact, or in probability, as the case may be, with intent to cheat or defraud any other person, and that fact appears in any proceeding under this article, such person shall forfeit all rights to such lien under this article.

The Roberts group argues that the statutes are irreconcilable and that the legislature repealed section 38–22–123 by implication when it adopted section 38–22–128. The Roberts group further argues that the intent of the adoption of section 38–22–128 was to provide additional protection to owners of property by imposing a less rigorous standard for determining whether the filing of an excessive mechanic's lien will cause a forfeiture. Finally, the Roberts group argues that the record establishes that CCI and Ideal filed a mechanic's lien with the knowledge that the amount claimed was greater than the amount due, thus resulting in a forfeiture of all mechanic's lien rights by the claimants pursuant to section 38–22–128.

Rejecting the statutory construction argument advanced by the Roberts group, the court of appeals concluded that the statutes can be and must be construed together, giving effect to each. *Concrete Contractors, Inc. v. E.B. Roberts Construction Co.*, 664 P.2d at 724. The court of appeals then held that "[t]he 'cheat or

---

**3.** Before the court of appeals, Roberts argued that the evidence was insufficient to support the trial court's conclusion that Roberts breached the contract, and that the trial court erred in failing to grant judgment for Roberts on its counterclaim, in which Roberts asserted that the plaintiffs breached the contract by failing to render timely performance. The court of appeals affirmed the trial court on these issues, *Concrete Contractors, Inc. v. E.B. Roberts Construction Co.*, 664 P.2d at 725–26, and Roberts has not sought review of these rulings in its petition for certiorari. In addition, Roberts argued that the trial court erred in failing to award Roberts and the Allied Bank of Texas judgment on their cross claim on the bond against The Continental Insurance Company because of CCI's admitted failure to pay a material supplier. The court of appeals agreed with Roberts on this issue and reversed the trial court. *Id.* at 726. Neither CCI nor The Continental Insurance Company has sought review of this holding.

defraud' standard in § 38–22–123 encompasses the 'knowledge' standard in § 38–22–128." *Id.* at 725. The court of appeals further held that "[t]he record supports the conclusion that there was no intent to cheat or defraud," noting as well that "the trial court found that, although the amount of the lien claimed in the lien statement was in excess of that actually awarded by the court, it was not excessive...." *Id.*

■ In determining whether a lien is excessive because it was filed for "an amount greater than is due without a reasonable possibility that said amount claimed is due," § 38–22–128, 16A C.R.S. (1982), or "a larger sum than is due or to become due, in fact, or in probability," § 38–22–123, 16A C.R.S. (1982), the matter must be viewed in light of the information available to the lien claimant at the time of filing the lien statement. There is evidence here, although conflicting, from which the trial court could conclude that CCI and Ideal utilized the information available and selected a valuation method that—albeit abandoned at trial—was reasonable under the circumstances in arriving at the amount claimed in the lien statement. This supports the trial court's summary finding that the lien claim was not excessive at the time of filing. The trial court's finding, therefore, is sufficiently supported by the evidence and cannot be overturned on appeal.[4] *Great Western Sugar Co. v. Jackson Lake Reservoir & Irrigation Co.*, 681 P.2d 484, 493 (Colo.1984); *Johnson v. Smith*, 675 P.2d 307, 312 (Colo.1984).

■ The determination that the lien claim was not excessive at the time of filing is sufficient to establish that the lien rights of Ideal and CCI were not forfeited under either section 38–22–128 or 38–22–123. It is unnecessary, therefore, to address the question, upon which the court of appeals' opinion turned, whether a forfeiture pursuant to section 38–22–128 will occur if the record establishes that a claimant filed an excessive lien with the knowledge that it was excessive, or whether the defendant must also prove an intent on the part of the claimant to cheat or defraud by filing the excessive lien claim pursuant to section 38–22–123. The result reached by the court of appeals—that the trial court did not err when concluding that CCI and Ideal did not forfeit their rights under the mechanics' lien statute—was correct and is affirmed for the reasons we have stated.[5]

4. The evidence concerning the manner in which Ideal and CCI calculated the amount of their lien claim lacked clarity and consistency. It can be gleaned from the testimony of Harold Baumgartner, the president of CCI, that in arriving at the $66,407.02 lien claim, CCI and Ideal added to the lump sum contract amount of $224,410 the sum of $6440 for gravel stabilization accomplished pursuant to change order, deleted $414.98 for floor hardener eliminated by change order, deducted $59,200 for asphalt paving not accomplished, and finally subtracted $104,828 received as progress payments. The dispute centered on the source of the $59,200 figure. Counsel for the owner and the general contractor attempted to show that it should have been larger based on the unit prices that were utilized by CCI in preparing its original bid. Baumgartner testified, however, that the $59,200 represented the cost of materials and labor that were not supplied by CCI because Roberts terminated the contract before the work could be accomplished. Baumgartner also testified that the cost of materials so deducted was based on costs at the time of filing the lien, and that costs had changed during the year since the unit prices used in arriving at the lump sum contract price were determined. The

trial court found that the lien claim "was not at time of filing, excessive." Although counsel for Roberts and the owner argues persuasively that Baumgartner's testimony is unconvincing and internally inconsistent, and that the method of valuing the work performed is inappropriate, we conclude that the determination whether the sum claimed was excessive because there was no reasonable possibility that the amount claimed was due, *see* § 38–22–128, 16A C.R.S. (1982), was dependent upon facts to be found from conflicting evidence and therefore was properly a matter for determination by the trial court.

5. By our holding here, we do not intimate that the court of appeals was correct in holding that the two forfeiture statutes are reconcilable. Rather, the statutes appear to be facially irreconcilable, requiring wholly different and conflicting standards for proving that a forfeiture of lien rights has occurred. On that basis, the statute enacted later in time, section 38–22–128, would prevail to the extent of the inconsistency. *Public Employees' Retirement Ass'n v. Greene*, 195 Colo. 575, 577, 580 P.2d 385, 387 (1978); *Lininger v. City of Sheridan*, 648 P.2d 1097, 1099 (Colo.App.1982).

### III.

The court of appeals held that CCI was a third-party beneficiary of the contract between Ideal and Roberts, and, therefore, CCI could be a party to an action to enforce the contract and recover damages based on lost profits. *Concrete Contractors, Inc. v. E.B. Roberts Construction Co.*, 664 P.2d at 725. We agree.[6]

 A person not a party to an express contract may bring an action on such contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract. *Haldane v. Potter*, 94 Colo. 558, 561, 31 P.2d 709, 710 (1934); *Fourth & Main Co. v. Joslin Dry Goods Co.*, 648 P.2d 178, 181 (Colo.App.), *cert. denied* (Colo.1982); *see Cripple Creek State Bank v. Rollestone*, 70 Colo. 434, 437, 202 P. 115, 116 (1921). While the intent to benefit the non-party need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both. *See Borwick v. Bober*, 34 Colo.App. 423, 429, 529 P.2d 1351, 1355 (1974).[7]

The trial court found that the sole reason for the substitution of Ideal for CCI as a party to the subcontract was to enable compliance with the contract requirement that a performance bond be obtained. Ideal could secure such a bond, but CCI could not. Roberts, Ideal and CCI all understood that CCI was to perform the work and be the ultimate recipient of the compensation. The course of dealing during performance of the contract evidenced and affirmed that understanding.

Roberts and Ideal entered into the agreement to benefit both Roberts and CCI. Roberts obtained the protection of a performance bond, which CCI was unable to provide. CCI achieved the ability to go forward with the work required under the subcontract and, upon doing so, to receive the agreed-upon compensation, an opportunity that it would otherwise have been denied because of its inability to obtain the

---

**6.** Alternatively, Ideal can recover against Roberts directly for lost profits. Although Baumgartner testified that Ideal suffered no damages, this obviously reflected his view that it was CCI, not Ideal, which was the true party in interest under the subcontract and was the party that suffered loss from the breach. If he was incorrect in this assumption, which is the implication that arises out of Roberts' challenge to CCI's ability to claim benefits under the contract, then Ideal should be able to recover. There is no dispute between Ideal and CCI as to which party should receive any amounts recovered. This is a case where the justice of the cause is apparent even though the relationships among the parties do not fit tidily into conventional forms of analysis. The trial court expressed this by characterizing Ideal and CCI as alter egos. *See* footnote 8, below.

**7.** In *Borwick v. Bober*, the court of appeals stated that a third person may enforce a contract obligation, although not a party to the agreement, if the promise to be enforced "is apparent from the agreement and surrounding circumstances and the benefit conferred is direct and not incidental." 34 Colo.App. at 429, 529 P.2d at 1355. The court of appeals repeated this statement of the law in this case. *Concrete Contractors, Inc. v. E.B. Roberts Construction Co.*, 664 P.2d at 725. Between *Borwick* and the present case, a panel of the court of appeals, in *Fourth*

*& Main Co. v. Joslin Dry Goods Co.*, stated that the intent to benefit the non-party "must be apparent from terms of the agreement as well as from surrounding circumstances." 648 P.2d at 181. The implication of this statement of the law is that if there is *no* indication in the agreement that a third person is intended by the contracting parties to benefit from the contract, as was the case here, the third person cannot be considered a third-party beneficiary of the contract no matter how strongly the surrounding circumstances indicate an intent to benefit that person. We conclude that the circumstances surrounding the execution or performance of a contract can be sufficient alone, if substantial, to establish the existence of an intended beneficiary to the contract and the nature of the promise that the beneficiary can enforce. Our conclusion is consistent with the description of an "intended beneficiary" given in section 302 of the Restatement (Second) of Contracts (1981). Section 302 provides, in relevant part:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ...
>
> * * * * * *
>
> (b) The circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

requisite bond. This benefit to CCI was direct, not incidental. Ideal made this possible by assuming the obligation for contract performance and the obligation as principal on the performance bond, all for the sole purpose of enabling CCI to go forward with the work. These were the unusual circumstances under which the June 15, 1979, "Contract Amendment" was executed.

We conclude that the trial court's findings on these matters, which the parties do not contest, adequately support the court of appeals' conclusion that CCI was a third-party beneficiary of the subcontract between Roberts and Ideal.[8]

We affirm the judgment of the court of appeals.

**8.** The trial court did not base its judgment for contract damages on a third-party beneficiary analysis. Instead, it concluded that CCI was an "alter ego" of Ideal, and thus could sue to enforce the contract. All parties now agree that CCI is not an "alter ego" of Ideal as that term is technically defined and applied. The alter ego doctrine is a means by which plaintiffs may "pierce the corporate veil" and hold shareholders liable for the obligations of a corporation. See *Gude v. City of Lakewood*, 636 P.2d 691, 697 (Colo.1981); *Contractors Heating & Supply Co. v. Scherb*, 163 Colo. 584, 587–88, 432 P.2d 237, 239 (1967); *Fink v. Montgomery Elevator Co.*, 161 Colo. 342, 350, 421 P.2d 735, 739 (1966). The record does not indicate that any formal connection between CCI and Ideal existed to be "pierced" by an application of the alter ego doctrine.