**EAST MEADOWS COMPANY, LLC, Plaintiff–Appellant,**

v.

**GREELEY IRRIGATION COMPANY, Defendant–Appellee.**

No. 02CA0478.

Colorado Court of Appeals, Div. V.

Feb. 13, 2003.

Hamil/Hecht LLC, J. Lawrence Hamil, Christina V. Miller, Denver, Colorado, for Plaintiff–Appellant.

Campbell, Latiolais & Ruebel, P.C., Colin C. Campbell, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge NIETO.

Plaintiff, East Meadows Company, LLC, appeals the summary judgment in favor of defendant, Greeley Irrigation Company (GIC). We reverse and remand for further proceedings.

GIC owns the Greeley No. 3 Ditch, which runs through the City of Greeley, and it employs a ditch rider to perform routine maintenance on the ditch.

In 1999, East Meadows entered into a Development Agreement with the city and was permitted to develop a subdivision on land bordering the ditch. The city also required East Meadows to design and construct certain improvements and modifications in and around the ditch, including the installation of trash racks in the ditch. GIC consented to the installation of the improvements and approved the plans for their construction.

The trash racks were installed in the ditch so that the water ran through them. The trash racks collected trash and debris as planned, but unexpectedly impeded the flow of water during rainstorms. GIC's ditch rider attempted to maintain the trash racks, but in spite of his efforts, water overflowed the ditch and caused damage to East Meadows' property on several occasions.

East Meadows asserted claims for damages based on negligence, trespass, nuisance, and violation of §§ 7–42–108, 37–84–101 and 37–84–107, C.R.S.2002. All the claims are based on damages that occurred when the ditch overflowed.

The parties filed cross-motions for summary judgment. The trial court found that it was undisputed that the flooding was caused by debris blocking the trash racks. It further found that GIC had no duty to maintain the trash racks and that East Meadows had such a duty because it had placed the improvements in the ditch. The court also found that East Meadows had assumed the duty to maintain the trash racks in its Development Agreement with the city. The trial court then granted GIC's motion and denied East Meadows' motion. This appeal followed.

I.

East Meadows contends that the trial court erred in granting GIC's motion for summary judgment. Specifically, East Meadows argues that the trial court erred in concluding that it, rather than GIC, had a duty to maintain the trash racks installed in the ditch. We agree that summary judgment was not appropriate because there were disputed issues of material fact. We

conclude that while GIC has a statutory duty to maintain the ditch and the trash racks, it is disputed whether East Meadows assumed the duty to maintain the improvements in its Development Agreement with the city and whether GIC reassumed those duties by its continued maintenance of the ditch improvements.

Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions establish that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Our review of an order granting summary judgment is de novo. C.R.C.P. 56(c); *Cissell Manufacturing Co. v. Park*, 36 P.3d 85 (Colo. App.2001). In reviewing a motion for summary judgment, all doubts as to the existence of a triable factual issue must be resolved against the moving party. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

 Ditch owners have a duty to maintain, use, and manage their ditches to prevent damage to the property of others. *See* §§ 7–42–108, 37–84–101, 37–84–107. Section 7–42–108 provides that "[e]very ditch corporation organized under the provisions of law shall be required to keep its ditch in good condition so that the water shall not be allowed to escape from the same to the injury of any mining claim, road, ditch, or other property." These statutes impose a duty of care on ditch owners, and failure to meet this duty can serve as the basis for a claim of negligence. *Greeley Irrigating Co. v. House*, 14 Colo. 549, 24 P. 329 (1890); *Oliver v. Amity Mutual Irrigation Co.*, 994 P.2d 495 (Colo.App.1999). Thus, as a ditch owner, GIC was required to use ordinary care in maintaining its ditch and preventing water from escaping and damaging adjoining property. *See Oliver v. Amity Mutual Irrigation Co., supra*.

East Meadows first argues that GIC had a statutory duty to maintain its ditch, including the trash racks East Meadows had installed. The trial court agreed that GIC had a statutory duty to maintain the ditch. However, it also concluded that the trash racks interfered with its ability to do so and that East Meadows had a duty to maintain the trash racks. The trial court relied on *Roaring Fork Club*,

*L.P. v. St. Jude's Co.*, 36 P.3d 1229 (Colo. 2001), in reaching its conclusion.

In *Roaring Fork Club*, the supreme court stated that "the right to inspect, operate, and maintain a ditch easement is a right that cannot be abrogated by alteration or change to the ditch." *Roaring Fork Club, L.P. v. St. Jude's Co., supra*, 36 P.3d at 1231. However, the supreme court was addressing the actions of a landowner who made changes in a ditch without the consent of the owner of the ditch easement. The supreme court held that the landowner's unilateral alteration of the ditch constituted a trespass. Here, East Meadows placed improvements in the ditch with the consent of GIC, who has not asserted that this constituted a trespass. Thus, *Roaring Fork Club* is inapposite.

The issue here is whether the duty imposed on GIC by § 7–42–108 includes the duty to maintain the trash racks that East Meadows placed in the ditch with GIC's consent. Section 7–42–108 requires ditch companies to maintain their ditches so that water does not escape and cause damage to other property. The statute makes no distinction between the earth embankments of the ditch and man-made structures that are incorporated into the ditch. It would be illogical to interpret the statute to apply to the earth embankments of a ditch, but to be inapplicable to structures such as trash racks that are incorporated into the ditch with the consent of the ditch owner. *See State v. Nieto*, 993 P.2d 493 (Colo.2000)(statutory interpretations that lead to absurd results are to be avoided). Such an interpretation would render the statute ineffective to achieve its purpose of preventing injury to property by water escaping from ditches.

██ Accordingly, we conclude that the duty imposed by § 7–42–108 applies to structures such as trash racks that are incorporated into a ditch.

The mere fact that East Meadows placed the trash racks in the ditch with GIC's consent did not relieve GIC of its statutory duty to East Meadows and others to maintain the ditch and the trash racks. GIC does not assert that its consent to placement of the trash racks was conditioned upon East

Meadows' assumption of the duty to maintain them.

Accordingly, the trial court erred in holding that GIC had no duty to maintain the trash racks. However, this conclusion does not resolve East Meadows' claims because, as discussed below, there are factual issues relating to whether East Meadows assumed the duty to maintain the improvements it installed in the ditch.

In a related issue, East Meadows contends that the trial court erred by holding that the trash racks were not constructed according to the plans approved by GIC, and therefore GIC's consent did not apply to the trash racks as constructed. We agree with East Meadows' contention because our review of the materials supporting the summary judgment motions reveals no evidence to support the trial court's conclusion that the trash racks were not constructed as planned.

## II.

East Meadows next contends that the trial court erred in holding that it expressly assumed responsibility for maintaining the improvements referred to in the Development Agreement. We conclude that summary judgment was inappropriate because there are disputed material facts relating to this issue.

■ "The general rule is that one who is not a party to a contract, and from whom no consideration moved, has no connection therewith. He can avail himself of its terms neither as a cause of action nor a defense." *Continental Casualty Co. v. Carver*, 91 Colo. 188, 193, 14 P.2d 181, 183 (1932); *see also Academy of Charter Schools v. Adams County School District No. 12*, 32 P.3d 456, 470 (Colo.2001)(entity that was not a party to the charter contract not permitted to seek its enforcement).

■ However, a person who is not a party to an agreement may enforce a contractual obligation if the promise to be enforced is expressly stated in the contract, or is apparent from the agreement and surrounding circumstances, and the benefit conferred is direct and not incidental. *Borwick v. Bober*, 34 Colo.App. 423, 429, 529 P.2d 1351, 1355 (1974).

■ In determining whether a party is a third-party beneficiary:

> The key question is the intent of the parties to the actual contract to confer a benefit on a third party. That intent must appear from the contract itself or be shown by necessary implication. It is a question of fact to be determined by the terms of the contract taken as a whole, construed in the light of the circumstances under which it was made and the apparent purpose the parties were trying to accomplish.

*Concrete Contractors, Inc. v. E.B. Roberts Construction Co.*, 664 P.2d 722, 725 (Colo. App.1982), *aff'd*, 704 P.2d 859 (Colo.1985).

The trial court relied on the Development Agreement between East Meadows and the city in concluding that East Meadows expressly assumed responsibility for maintaining the improvements and thus bore the duty of maintaining them. However, GIC was not a party to the agreement and cannot seek to enforce the terms of the agreement unless it was a third-party beneficiary.

■ There are several disputed factual issues concerning the Development Agreement. The agreement does not specifically refer to the trash racks, and East Meadows disputes whether the maintenance provisions of the agreement apply to those improvements. In light of the lack of specificity in the agreement and the statements of GIC's president in his deposition that GIC had a duty to clean the trash racks, there is clearly a dispute as to the extent of the maintenance duty in the Development Agreement.

Further, the evidence relating to the Development Agreement does not establish whether East Meadows and the city intended to confer a benefit on GIC. Thus, GIC's status as a third-party beneficiary is in dispute.

■ Moreover, even if East Meadows' duty under the agreement had been established, there is a factual dispute whether GIC nevertheless assumed the maintenance duty by its continuing efforts to clean the trash

racks. Under some circumstances, a party may assume duties of care by voluntarily undertaking to render a service, and negligent performance of that assumed duty may impose liability. Whether a party has assumed a duty is a mixed question of law and fact. *Jefferson County School District R–1 v. Justus,* 725 P.2d 767 (Colo.1986).

Because we have determined that the trial court erred in ruling that GIC did not have a duty to maintain the trash racks as a matter of law and because genuine issues of material fact exist concerning whether either of the parties assumed the duty to maintain the trash racks, we conclude that it was error to grant GIC's motion for summary judgment.

### III.

The trial court granted summary judgment dismissing East Meadows' trespass and nuisance claims based on its conclusion that East Meadows had a duty to maintain the ditch improvements. Because we have determined that the trial court erred in granting summary judgment on the question of duty, there is no basis to dismiss the trespass and nuisance claims.

■ GIC argues that East Meadows cannot prevail on its trespass and nuisance claims as a matter of law. GIC reasons that because a ditch owner can be held liable for negligence for failing to comply with its statutory requirements, common law theories of liability such as trespass and nuisance do not apply to it. However, GIC has cited no authority, and we are aware of none, to support this proposition. Further, if the General Assembly intends to abrogate common law rights of action, that intent must be manifested expressly or by clear implication. *See Bayer v. Crested Butte Mountain Resort, Inc.,* 960 P.2d 70 (Colo.1998). We perceive no such intent in § 7–42–108.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge TAUBMAN and Judge CASEBOLT concur.