In re TELLURIDE GLOBAL
DEVELOPMENT, LLC,
Debtor.

Telluride Global Development,
LLC, Plaintiff–Appellee,

and

Telluride Asset Resolution, LLC,
Intervenor–Plaintiff–
Appellee,

v.

Dennis Bullock, Steve Hinkle, Mary L. Hinkle, Jerry D. James, Kenneth R. Miller, Eugene C. Moravec, Michael E. Monoscalco, Madelyn J. Monoscalco, Jill Marie Monoscalco, Laura C. Monoscalco, Joseph R. Nardone, Ralph Edward Preston, Ken E. Rhode, Oliver James Sterling II, Oliver James Sterling III, Sandra R. Tingle, R.M. Yost Ira, R. Michael Yost, Roselva M. Yost, Don G. Lyle, Jon R. Lyle, Howard W. Nutt, and Moving Limited Partners, Defendants–Intervenor–Defendants–Appellants,

and

Don Gerber, Appellant,

and

Muriel Jean Duval, Michael Milburn, Alda Moravec, Kevin D. Sorbo, Vanessa Ruth Sterling, Brendan D. Thomson Ira, Anna Mendrin, Mike Galvin, Anita Galvin, The Estate of Howard R. Hornback, James Trichak, Timothy O'Mara, Jerome Kraft, Marc Mendelsohn, Dennis Scholtz, Rita Coker, Curt Simmons, Cynthia Simmons, Sal–Don Pension Plan, Carl E. Bornhouser, Amporn Somsin, Donald Turntine, Janice Turntine, June Somsin, Jesse J. Ford Keogh, Mark Voss, Andrew B. Glaus, James E. Haynes, Diane Shantie, Bill Von Dielingen,

Pakaharn Somsin, Raymond M. Locker, Jason Boreyko, Ben K. Boreyko, Charles Nelson, Laurie A. Laurie, Creative Investments (Gary Larson), Barbara Chase, Ann P. Fleckles, Choosin Bhandusavee, Lambie Bullock, and Louis Duval, Defendants.

BAP No. CO–07–048.
Bankruptcy No. 06–12720–MER.
Adversary No. 06–01588–MER.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

Dec. 28, 2007.

See also 364 B.R. 407.

Steven R. Fox of the Law Offices of Steven R. Fox, Encino, CA, for Defendants–Appellants.

John C. Smiley (Harold G. Morris, Jr. with him on the brief) of Lindquist & Vennum P.L.L.P., Denver, CO (Michael T. Gilbert of Reed & Gilbert, Ouray, CO with him on the brief), for Plaintiff–Appellee and Intervenor–Plaintiff–Appellee.

Before McFEELEY, Chief Judge, MICHAEL, and THURMAN, Bankruptcy Judges.

MICHAEL, Bankruptcy Judge.

This appeal involves a dispute between the limited partners of Telluride Income Growth Limited Partnership ("TIGLP"), Telluride Asset Resolution, LLC ("TAR"), a debtor in another bankruptcy case, and the present debtor, Telluride Global Development, LLC ("Telluride Global"). The bankruptcy court was asked to abstain from hearing the dispute, and to allow the matter to proceed in state court. The bankruptcy court declined to abstain and held a four day trial on the issue of whether the TIGLP limited partners acquired any rights under two agreements to which the limited partners are not parties. The bankruptcy court determined that no such rights existed. The limited partners claim that the bankruptcy court erred when it decided to hear the case, and committed further error in the substance of its decision. Finding no error, we affirm.

## I. BACKGROUND

This is the third appeal arising out of the transactions between TIGLP, TAR, and 25 of the limited partners of TIGLP (the "Limited Partners").[1] *Telluride II* contains a detailed recitation of the operative facts of this case. Rather than reinvent the wheel, we will repeat those findings herein for the benefit of the reader:

Telluride Income Growth LP ("TIGLP"), an Arizona limited partnership [was] formed in 1991 to acquire, develop, and sell real property in the town of Telluride, Colorado, known as the Ballard House. Several dozen limited partners invested approximately $1.6 million in the project. In 1994, the original general partners were replaced. William Baird was a member of the Board of Directors of the new general partner, Peak Returns, LLC, and was also in control [of] the development's manager. One of the project's two buildings (the South Building) was completed in 1998, and the other property (the North Building) remains in the pre-

---

**1.** *See Telluride Asset Resolution, LLC v. Telluride Global Dev., LLC (In re Telluride Income Growth LP),* 364 B.R. 390 (10th Cir. BAP 2007) (hereafter *"Telluride I "*) and *In re Telluride Income Growth LP,* 364 B.R. 407 (10th Cir. BAP 2007) (hereafter *"Telluride II "*).

liminary stages of construction. [TIGLP] ran out of money in the course of developing the North Building, and in October 1999 when faced with foreclosure, agreed to transfer several remaining unsold units in the South Building and the entirety of the uncompleted North Building to Western Slope, LLC, a Baird entity.

The agreement pursuant to which the sale occurred was called "Contract For Sale and Equity Participation Agreement" ("EPA"). Under the EPA, Western Slope agreed to pay TIGLP's existing debts on the property (at the time, over $6.4 million) and to finance and complete construction of the North Building. The EPA provided that, if build-out and sale of the Ballard House occurred, [TIGLP] would be entitled to 80% of the net profits, and Western Slope to 20%. Net profits are defined in Schedule C as total project revenues less: (1) repayment of all project expenses and existing and future debt related to the obligations under the agreement; and (2) repayment of the amount of [TIGLP's] investors' outstanding original investment in an amount not to exceed $1.6 million, plus interest from the date of investment forward at the rate of 8%. A subordinated Purchase Money Deed of Trust ("PMDOT") was given to [TIGLP] to secure performance of Western Slope's obligations under the EPA. The EPA requires that the PMDOT include specific language limiting the remedies available in the event of breach of the EPA to recourse against the real property subject to the deed of trust, i.e., the Ballard House. [TIGLP] and Western Slope are the only named parties to both the EPA and the PMDOT.

Western Slope made no significant progress with the construction of the North Building, and by early 2002, the primary lender, Pueblo Bank, commenced foreclosure against Western Slope. On February 15, 2002, E–Global Development Limited ("E–Global"), an entity owned/controlled by the Arthur and Robert Levine families (hereafter the "Levines"), who had previously made a significant investment in the Ballard House through Bauhinia, Ltd. ("Bauhinia"), bought the Pueblo loan for the full amount owed. Western Slope then gave E–Global a deed in lieu of foreclosure. E–Global then quitclaimed its interest to Telluride Global Development, LLC ("Telluride Global"), also a Levine company. The transfer was subject to the EPA.

On October 11, 2002, twenty-five of [TIGLP's] limited partners ("Limited Partners"), representing contributors of approximately one half of the original $1.6 million invested in [TIGLP] by limited partners, commenced litigation in San Miguel County, Colorado state court, styled *Dennis Bullock, et al. v. Telluride Income/Growth Limited Partnership, Ltd., et al.*, case number 02–CV78 (the "State Court Litigation"). There were twenty-seven defendants, including E–Global, Bauhinia, Telluride Global, [TIGLP], Western Slope, [TIGLP's] general partners, [TIGLP's] management and related entities, various lenders, and third-party purchasers of completed Ballard House condominium units in the South Building. The complaint alleged six causes of action: (1) breach of fiduciary duty and mismanagement of partnership assets; (2) accounting by, and dissolution of, [TIGLP]; (3) damages for breach of the partnership agreement; (4) misappropriation and fraudulent conveyance of partnership assets; (5) self-dealing; and (6) foreclosure of an equitable lien against the undeveloped North Building

and unsold units in the South Building. The Limited Partners' allegations included the contention that the transfer of the Ballard House to Western Slope pursuant to the EPA was fraudulent and improper. Although not filed as a derivative action, the complaint asserted causes of action that were in fact [TIGLP's] claims. Amended complaints adding parties and amending paragraphs in the original complaint were filed.

Defendants Bauhinia, E–Global, and Telluride Global sought dismissal of the foreclosure claim for failure to state a claim. The Limited Partners defended the motion by asserting that they were proper parties to foreclose the lien on Ballard House because they were third party beneficiaries of the EPA, which is secured by the PMDOT. The motion to dismiss was denied. The state court found that the allegations of third party beneficiary status and entitlement to an equitable lien were sufficient to withstand the motion to dismiss. The state court, upon Limited Partners' motion, granted a preliminary injunction enjoining the defendants from selling the Ballard House property.

In March 2003, a voluntary Chapter 7 petition was filed on behalf of [TIGLP] by a limited liability company purporting to be [TIGLP's] general partner. That petition was dismissed in March 2004, on the Limited Partners' motion for summary judgment, due to defects in the authority of the legal entity. In the meantime, on October 29, 2003, E–Global, Telluride Global (the owner of Ballard House), and a third party filed an involuntary Chapter 7 petition against [TIGLP]. The order for relief was entered on June 4, 2004. On September 1, 2004, the Chapter 7 Trustee filed a Notice of Removal of the State Court Proceeding.

During the course of the bankruptcy, Telluride Asset Resolution, LLC ("TAR"), a Levine controlled entity, entered into an Agreement with the Trustee to purchase substantially all of [TIGLP's] assets. The assets included were the estate's claims asserted in the State Court Litigation, including the claims asserted by the Limited Partners as derivative claims, and [TIGLP's] rights under the EPA. The Agreement also provided that the Trustee would release the PMDOT and any and all claims of the estate against TAR, Telluride Global, E–Global, and Bauhinia. Under the Agreement reached with the Trustee, the estate would receive $250,000 cash and release of claims in the amount of $10,519,079. On March 22, 2005, the Chapter 7 Trustee filed a motion pursuant to 11 U.S.C. § 105(a) and § 363 for approval of the sale. The Limited Partners objected, asserting that the consideration to be received by the estate was insufficient because the Trustee had not properly evaluated state court claims. After four days of evidentiary hearings on the objections, the bankruptcy court on August 2, 2005, granted the motion and approved the Agreement. Findings of fact and conclusions of law were read into the record and incorporated by reference into the court's order, entitled Order Under 11 U.S.C. § 363, And Fed. R. Bankr.P. 2002, 6004, 9014 And 9019(a), (A) Approving Agreement To Acquire Assets And Release Claims; And (B) Authorizing (I) Transfers Of Certain Of Debtor's Assets Free And Clear Of Liens, Claims, Interests And Encumbrances, And (II) Mutual Release of Claims (hereafter "Sale Order"). Those findings included the following: "The limited partners are neither parties to the equity participation agreement, nor benefi-

ciaries of the purchase money deed of trust that secures obligations under it." August 2, 2005 Hearing Transcript at 15, *ll* 13–16, *in* Appellants' Appendix, Vol. 3, at 774. No stay was obtained, and no appeal was filed from the Sale Order. The sale was closed on August 15, 2005.

On August 11, 2005, the Limited Partners filed a motion to alter or amend the findings of fact and conclusions of law, but only as to the foregoing one sentence finding relating to the Limited Partners' rights under the EPA and the PMDOT. Telluride Global, E–Global Development, and TAR opposed the motion. On September 7, 2005, the bankruptcy court denied the Limited Partners' motion to alter or amend without stating reasons. On September 16, 2005, the Limited Partners filed a Notice of Appeal from the September 7, 2005 judgment.[2]

We will use the defined terms employed in *Telluride II.*

On September 1, 2004, during the course of the TIGLP case, the bankruptcy trustee removed the State Court Litigation to bankruptcy court. In October 2005, upon motion by TAR, which was opposed by the Limited Partners, the bankruptcy court remanded the State Court Litigation back to state court.[3] The decision to remand was the subject of the appeal in *Telluride*

*I.* This Court affirmed the decision of the bankruptcy court to remand the State Court Litigation.[4]

On May 15, 2006, Telluride Global filed its Chapter 11 bankruptcy petition, listing ownership and development of Ballard House as its principal business.[5] Telluride Global then filed the present adversary proceeding (the "Adversary Proceeding") against the Limited Partners, seeking a determination that their third-party beneficiary and equitable lien claims under the EPA and the PMDOT were invalid.[6] TAR was allowed to intervene as a party plaintiff in the adversary proceeding. The Limited Partners' motion to dismiss the Adversary Proceeding in favor of the removed and now remanded State Court Litigation was denied by the bankruptcy court. On March 28, 2007, following a four-day evidentiary hearing, the bankruptcy court issued an order disallowing the Limited Partners' third party beneficiary and equitable lien claims. The Limited Partners timely appealed that order.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court

---

2. See *Telluride II,* 364 B.R. at 410–12 (footnotes omitted).

3. *Telluride I,* 364 B.R. at 395. This statement is an oversimplification, as the bankruptcy court also dismissed certain claims without prejudice. The key point for our purposes is that, after the remand of the State Court Litigation, there was no other litigation pending in federal court relating to the issues that are the subject of this appeal.

4. *Id.* at 401.

5. According to Telluride Global, the petition was necessitated, in part, by the pendency of *Telluride I* and *Telluride II* before the BAP, coupled with the upcoming expiration of the Ballard House development rights that had been issued by the Town of Telluride.

6. The complaint in the present matter contained other claims for relief, including dissolution of the state court injunction and fraudulent conveyance, both of which were ultimately denied by the bankruptcy court. Telluride Global agreed to drop its other claims prior to trial.

hear the appeal.[7] Neither party elected to have this appeal heard by the United States District Court for the District of Colorado. The parties have therefore consented to appellate review by this Court.

■ A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' "[8] In this case, the order of the bankruptcy court concluded the Adversary Proceeding. Nothing remains for the bankruptcy court's consideration. Thus, the decision of the bankruptcy court is final for purposes of review.

## III. STANDARD OF REVIEW

■ For purposes of standard of review, decisions by trial courts are traditionally divided into three categories. There are questions of law, which are reviewable *de novo*. *De novo* review requires an independent determination of the issues, without deference to the bankruptcy court's legal conclusions.[9] Questions of fact are reviewed for clear error.[10] A factual finding is "clearly erroneous" when " 'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.' "[11] Finally, there are matters left to the discretion of the trial court, which are reviewable for abuse of that discretion.[12] "Under the abuse of discretion standard[,] 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.' "[13]

## IV. ISSUES ON APPEAL

The Limited Partners allege that the bankruptcy court erred:

A. When it exercised jurisdiction to hear matters relating to the EPA and the PMDOT in violation of the "prior pending action doctrine."

B. When it determined that the Limited Partners were not third party beneficiaries of the EPA and the PMDOT.

C. In ruling that the Limited Partners were not entitled to an equitable lien upon the Ballard House.

We will examine each alleged error in turn.

## V. DISCUSSION

### A. *The Prior Pending Action Doctrine*

■ The prior pending action doctrine is based on federal court efficiency and may be applied when two pending *federal* court actions involve the same or similar

7. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–1(a) & (d).

8. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

9. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

10. *See* Fed. R. Bankr.P. 8013; *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir.1996).

11. *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir.1990) (quoting *LeMaire ex rel. LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir.1987)).

12. *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

13. *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553–54 (10th Cir.1991)).

claims and parties.[14] Under the doctrine, the first federal action is generally given priority, absent a showing of greater convenience or special circumstances that favor the second action, in order to avoid duplicative litigation.[15] The second action may be either stayed or dismissed.

■ The Limited Partners argue that the Adversary Proceeding should have been dismissed in favor of the TIGLP adversary proceeding. However, the TIGLP adversary was ordered remanded to the state court, and the order of remand was affirmed by this Court in *Telluride I.* Thus, the TIGLP adversary is no longer pending, and there is no other federal action pending for purposes of the prior pending action doctrine. As a result, dismissing the current proceeding would not satisfy any need for federal judicial efficiency. Moreover, the prior pending action doctrine is inapplicable where the first action is not in federal court.[16]

■ What the Limited Partners are really asking is that the bankruptcy court abstain in favor of the State Court Litigation that became the TIGLP adversary proceeding and was later remanded back to state court. The appropriate standards for abstention in such an instance are set out in *Colorado River Water Conservation District v. United States.*[17] In *Colorado River,* the United States Supreme Court set out six factors for courts to consider in deciding whether to abstain:

1. the assumption of jurisdiction by either court over any *res* or property;

2. the inconvenience of the federal forum;

3. the avoidance of piecemeal litigation;

4. the order in which jurisdiction was obtained;

5. whether state or federal law supplies the rule of decision; and

6. whether the rights of the party seeking federal jurisdiction will be adequately protected in the state court proceeding.[18]

No one factor is determinative, and the weight given to any factor is dependent on the circumstances of the case. Under *Colorado River,* the scale is heavily weighted in favor of federal jurisdiction, and requires a finding that the two proceedings are "parallel" or that " 'substantially the same parties are contemporaneously litigating substantially the same issue.' " [19] The power to abstain should be exercised only in extraordinary circumstances.[20]

■ The bankruptcy court made its decision to hear the issues before it based upon the following factors: (1) due to the fact that the other action was pending in state, not federal court, the "pending prior action doctrine" [sic] was not applicable; and (2) the bankruptcy court had jurisdiction over the Limited Partners, because they filed proofs of claim in the bankruptcy case.[21] The decision as to whether to abstain is a matter left to the discretion of

---

14. *See Bradley v. Kelly,* 479 F.Supp.2d 281, 284 (D.Conn.2007).

15. *Id.*

16. *V.C.X., Ltd. v. Burge,* No. 2:06–CV–00641, 2006 WL 3511347, at *6 (D.Nev. December 5, 2006).

17. 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

18. *Bradley,* 479 F.Supp.2d at 285.

19. *Id.* (quoting *Dittmer v. County of Suffolk,* 146 F.3d 113, 117–18 (2d Cir.1998)).

20. *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,* 425 F.Supp.2d 484, 511 (S.D.N.Y.2006).

21. *Order* at 11, *in* Appellants' App. at 426.

the bankruptcy court. We find no abuse of that discretion.[22]

### B. *The Limited Partners as Third Party Beneficiaries*

The Limited Partners allege that the bankruptcy court erred when it held that they were not third party beneficiaries under the terms of the EPA and the PMDOT. The argument is two-pronged. First, the Limited Partners contend that these documents are not ambiguous, and that a plain reading of them establishes that the Limited Partners are entitled to third party beneficiary status. The Limited Partners also argue that, even if these documents are ambiguous, the parol evidence presented to the bankruptcy court establishes the intent of the parties to these agreements to grant third party beneficiary status to the Limited Partners.

 In its opinion, the bankruptcy court ably summarized Colorado law on the issue of third party beneficiaries:

Generally, a person who is not a party to a specific contract and who has furnished no consideration cannot avail himself of the terms or rights provided under the contract. *See East Meadows Co., LLC v. Greeley Irr. Co. (East Meadows)*, 66 P.3d 214, 217 (Colo.App. 2003) (*citing Academy of Charter Schools v. Adams County School District No.*, 32 P.3d 456, 470 (Colo.2001); *Continental Casualty Co. v. Carver*, [91 Colo. 188,] 14 P.2d 181, 183 (Colo.1932)). However, under Colorado law there is an exception to the general rule which provides, "[a] person not a party to an express contract may bring an action on such contract if the parties to the agree-

ment intended to benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract." *E.B. Roberts Const. Co. v. Concrete Contractors, Inc. (Roberts S.Ct.)*, 704 P.2d 859, 865 (Colo. 1985); *aff'd* 664 P.2d 772[722] (Colo.App. 1982); *see also R.N. Robinson & Son, Inc. v. Ground Improvement Techniques*, 31 F.Supp.2d 881, 887 (D.Colo. 1998). The non-party seeking to derive a benefit from the contract is commonly referred to as the third-party beneficiary. In order to determine whether a non-party may assert a claim as a third-party beneficiary,

[t]he key question is the intent of the parties to the actual contract to confer a benefit on a third party. That intent must appear from the contract itself or be shown by necessary implication. It is a question of fact to be determined by the terms of the contract taken as a whole, construed in the light of the circumstances under which it was made and the apparent purpose the parties were trying to accomplish.

*East Meadows*, 66 P.2d[P.3d] at 217; (*citing Concrete Contractors, Inc. v. E.B. Roberts Const. Co.*, 664 P.2d at 725 (Colo.App.1982), *aff'd*, 704 P.2d 859 (Colo.1985)).[23]

Armed with this information, the bankruptcy court undertook a thorough review of the EPA and the PMDOT and determined that these documents were unambiguous and did not create any manner of third party beneficiary status for the Limited Partners. In reaching its decision, the bankruptcy court considered section

---

**22.** The fact that the TIGLP adversary proceeding was still technically "pending" when the decision not to abstain in favor of a prior pending action was made does not diminish our view that, under the circumstances of this case, the refusal to abstain did not constitute an abuse of discretion.

**23.** *Order* at 12, *in* Appellants' App. at 427.

2.01(a) of the EPA, and Schedule C attached thereto (both of which were relied upon by the Limited Partners), and determined that neither of these provisions "confer[red] any direct payment rights to the [Limited Partners] in this case."[24] The bankruptcy court further held that such an interpretation was consistent with section 2.01(h) of the EPA, which made it clear that TIGLP, and no other entity, was the intended beneficiary of any equity in Ballard House. The bankruptcy court also noted that none of the Limited Partners signed the EPA, none were named parties in either the EPA or the PMDOT, and none gave any consideration for the EPA. On this basis, the bankruptcy court concluded that the Limited Partners were not third party beneficiaries under either the EPA or the PMDOT.

We agree with the conclusions reached by the bankruptcy court. The Limited Partners rely upon the definition of "net profits" in Schedule C of the EPA, noting that said definition deducts from net profits "repayment of the amount of the [TIGLP] investors outstanding original investment."[25] However, as the bankruptcy court noted, this clause merely sets out a priority of payment and does not establish a right to payment. The decision that the Limited Partners were not third party beneficiaries under either the EPA or the PMDOT is correct and is affirmed.

The bankruptcy court went on to hold that, even if the EPA and PMDOT were ambiguous, there was ample parol evidence in the record to support the conclusion that the Limited Partners were not third party beneficiaries thereunder.[26] The Limited Partners have failed to provide a transcript of the trial in this Adversary Proceeding, thereby preventing this Court from reviewing the factual findings of the bankruptcy court. Without a transcript, the findings of the bankruptcy court based upon parol evidence must be summarily affirmed.[27]

### C. The Limited Partners and the Equitable Lien

▆▆▆ The Limited Partners allege that the bankruptcy court erred when it failed to find that they were entitled to an equitable lien upon the Ballard House property. At the trial of this Adversary Proceeding, the Limited Partners never expressly stated the basis for their equitable lien claim. In its opinion, the bankruptcy court also considered whether they could prevail on such a claim, even if they were not third-party beneficiaries.[28] The bankruptcy court noted that, under Colorado law, an equitable lien is based on "general considerations of right and justice as applied to the relationship of the parties."[29] The two elements of an equitable lien claim are a debt or duty owed by one party to another and a *res* to which the obligation

---

24. *Id.* at 13, *in* Appellants' App. at 428.

25. Schedule C to EPA at 17, *in* Appellants' App. at 45.

26. *Order* at 14–15, *in* Appellants' App. at 429–30. We assume the bankruptcy court utilized this "belt and suspenders" approach to support its decision in the interests of judicial economy, in order to allow a reviewing court to glean all possible bases which support its conclusion, and to minimize the prospects of

retrial of the issues upon remand. We have no quarrel with this approach.

27. *See Anstine v. Centex Home Equity Co.* (*In re Pepper*), 339 B.R. 756, 760–61 (10th Cir. BAP 2006).

28. *See Order* at 15 n. 10, *in* Appellants' App. at 430.

29. *Id.* (quoting *Leyden v. Citicorp Indus. Bank*, 782 P.2d 6, 9 (Colo.1989)).

may be fastened.[30] The bankruptcy court's conclusion that the EPA did not create third party rights eliminated any contractual basis for an equitable lien. Therefore, the court considered whether any conduct of the Levines, or any of their entities including Telluride Global, could give rise to a debt, duty, or obligation to the Limited Partners.[31]

 Throughout the Adversary Proceeding, and continuing on appeal, the Limited Partners have attempted to show that there was a conspiracy to mismanage TIGLP and deprive the Limited Partners of their equity.[32] However, the bankruptcy court found that there was "no evidence the Levines conspired with *anybody* to mismanage or harm TIGLP or its investors."[33] The bankruptcy court's findings on the equitable lien issue cannot effectively be reviewed without a transcript of the trial. We have no choice but to summarily affirm the decision of the bankruptcy court.

## VI. CONCLUSION

The decision of the bankruptcy court is affirmed in all respects.

---

**30.** *Leyden,* 782 P.2d at 11.

**31.** The Limited Partners contend that the bankruptcy court's focus on the Levines' conduct was error. Appellants' Opening Brief at 45–46. However, they neither effectively argue this position nor cite any legal support for it.

**32.** This position is contrary to the Limited Partners' principal assertion that Western Slope (a Baird entity) and Peak (as general partner of TIGLP) intended to *protect* their equity by making them third-party beneficiaries of the EPA.

**33.** *Order* at 18, *in* Appellants' App. at 416, 433 (emphasis in original).